Tison and others *vs.* Yawn.

No. 70.—Joab Tison and others, plaintiffs in error, *vs.* Anthony Yawn, defendant in error.

[1.] Before interrogatories are allowed to issue, under the Act of 1847, to compel discoveries at Common Law, it must be made to appear to the Court, by the oath of the party filing the same, *or otherwise*, that the answers will be material, and that the questions are pertinent: *Held*, that this preliminary proof may be deduced from the record itself, and the relation which the party sought to be examined occupies, to the facts in the cause.

[2.] It is competent for the Court to order a non-suit, where there is no proof to support the issue.

[3.] If there be evidence upon which a verdict for the plaintiff could be rendered, the case should be submitted to the Jury.

[4.] It is not true, that the Court will compel a non-suit, wherever it would grant a new trial, if the finding were for the plaintiff, because it was contrary to evidence. A motion for a non-suit, at Law, is like a demurrer in Equity; and if, admitting all the facts proved, and all reasonable deductions from them, the plaintiff, on all the proof, ought not to recover, the non-suit ought to be awarded.

[5.] The doctrine in *Sykes vs. McRory*, (10 *Ga. Rep.* 465,) re-affirmed, to wit: that "a grant issued by mistake, can only be avoided by *sci. fa.*, or some other proceeding for that purpose, in Chancery; and that it cannot be impeached, collaterally, at Law, by showing that the grantee intended, was a different person, and of a different name, from the one mentioned in the grant.

[6.] If the rights of third persons have not intervened, it is competent for the Governor to correct mistakes in grants; otherwise, there must be a

judgment or decree of a Court for the purpose of ascertaining and establishing the fact.

[7.] If the attornment of the tenant is superinduced by the misrepresentations of the landlord, as to his title, the tenant will not be estopped by it.

Ejectment, in Baker Superior Court. Tried before Judge PERKINS, May Term, 1854.

This was an action of ejectment, upon the demise of Jacob Tison, and also of the heirs of Joab Tison *vs.* Anthony Yawn, for a lot of land. Defendant's counsel filed interrogatories for Jacob Tison, to prove: 1st. That there never was any such man; and, 2d. That if there ever was such a man, he was dead. Plaintiff's counsel objected to answering, because it had not been made to appear to the Court, either by the affidavit of the party, or otherwise, that the testimony was material. The Court over-ruled the objection, and this decision is assigned as error.

The plaintiff introduced evidence, to show that *Yawn & Baldree*, (under whom he claimed,) never set up any claim to this land, while in possession, but acknowledged the title of the Tisons, and offered, once, to purchase from them.

The grant offered in evidence, was to Jacob Tison, of Ellis's district of Twiggs county. Counsel for plaintiffs proposed to prove, that the name of *Jacob* was a mistake for *Joab*—that no such man as Jacob Tison lived in that district, and that this was intended for *Joab* Tison. The Court rejected this evidence, and this is assigned as error.

The Court granted, on motion, a non-suit against the plaintiffs, to which they excepted: 1st. Because a Court cannot grant a non-suit, *in invitum.* 2d. Because there was sufficient evidence of tenancy, to carry the case to this Jury. On these exceptions, error has been assigned.

STROZIER, TUCKER and WARREN, for plaintiffs in error.

LYON & CLARK, for defendant.

Tison and others *vs.* Yawn.

*By the Court.*—LUMPKIN, J., delivering the opinion.

[1.] Was the Court authorized to grant its mandate, direct-ing interrogatories to issue for Jacob Tyson? In other words, was it made to appear, by the oath of the defendant, *or other-wise*, in the language of the Act of 1847, that the testimony was material; and that the questions propounded were perti-nent?

It will be remarked, that Jacob Tison is one of the lessors of the plaintiff. Now, the object of this testimony was, as the record discloses, to prove by the party himself, whose name was thus used, either that he never existed, or that he was dead before this suit was brought! That the proof, if procurable, (?) would be material, there cannot be a doubt. It would defeat a recovery under this count, in the writ. The Judge was un-questionably right, therefore, in allowing the commission to issue, leaving to the applicant the more difficult task, as it would seem, of establishing by the witness his own nonentity, or subsequent demise.

[2.] Should a non-suit have been awarded?

While we re-affirm the position heretofore occupied by this Court, that it is competent to grant a non-suit, where there is no proof to support the issue—

[3.] Still, we maintain, that if there be any evidence, upon which a verdict could be rendered, the case should not be with-holden from the Jury.

[4.] Nor do we recognize the rule, that if, after verdict, the Court would grant a new trial, because the verdict was contrary to evidence, it is bound to award a non-suit, on motion, before trial. Such a doctrine would be an unwarrantable encroach-ment upon the province of a Jury.

A motion for a non-suit, at Law, is like a demurrer in Equity. And if, admitting all the facts proved, and all reasonable de-ductions from them, the plaintiff, on all the proof, ought not to recover, the non-suit ought to be ordered.

We are aware that there is a conflict of authority, upon this point, in this country. (*Elmore vs. Grimes* 1 *Peters.* 471.

*De Wolf vs. Roland et al. Id.* 497. *Hunt vs. Stewart,* 7 *Ala.* 525. *Martin vs. Webb,* 5 *Pike,* 72. *St. Louis Floating Dock Insurance Co. vs. Souland,* 8 *Missouri,* 665. *Wells vs. Gates, Id.* 681. *Booe vs. Davis,* 5 *Blackf.* 115.) But we think, that with the limitation on the exercise of the power, adopted by this Court, a peremptory non-suit should be allowed where a party has wholly failed to make out his case; especially as our own Statutes seem to recognize such a power in the Courts, as that of compelling non-suits. (*Cobb's Digest,* 48, 492, 486, 488, 493.)

Was there, then, testimony in this record, apart from the grant or paper title sufficient to carry this case to the Jury? It is in proof, that Baldree went into possession of the premises in dispute, in 1841, holding expressly as the tenant of the Tisons; that Yawn, the defendant in ejectment, gave him ten dollars for his claim, both of them still acknowledging paramount title in the plaintiffs. But more than this, when Turner purchased of the Tisons, Yawn said to one of the Tisons, he would never get his pay, and offered him two hundred dollars for the land. Upon the doctrine of tenancy, then, shall he be permitted to deny this title?

[5.] Lastly. The grant was tendered in evidence; it was to *Jacob* Tison. The depositions of Grimsley were offered, to explain the grant, and to show that it should have issued to *Joab* Tison. This parol proof was rejected; and the Court held, upon the authority of *Sykes vs. McRory,* (10 *Ga. Rep.* 665,) that the mistake in the grant, could not be corrected in this way. In other words, that a party claiming under a grant, cannot first raise an ambiguity, by parol, and then explain it in the same way; but that a direct proceeding, by bill or otherwise, should be instituted for that purpose.

Precedents may be found on both sides of this practice, as was admitted by this Court, in the case cited. And there are plausible reasons, to sustain either view of this question. We are inclined, however, to adhere to the opinion already expressed, namely: that the better course is, to institute a direct proceeding, to correct the mistake in the grant.

It would seem that a grant from the State, which is the foundation or first link in a chain of title to real estate, which is to extend through all future time, should be treated with more solemnity than ordinary documents. Real estate can only pass by deed; and these muniments of title, which are recorded as notice to all the world, of their contents, as well as the *factum* of their execution, should speak the truth. The correction, as to the misnomer, then, should not only be made to meet the exigencies arising out of the trial of the pending ejectment, but to secure the title, forever, from impeachment.

[6.] If the rights of third persons have not intervened, the Governor can make the correction; otherwise, it can only be ascertained, in a judicial proceeding between the litigating parties, in which the judgment or decree to be rendered, will enable the Executive to make the alteration. And then, it will be notice to everybody. Until this adjudication can be had, the action at Law can be restrained; then, the cloud will be removed from the title.

Mr. Grimsley must die, as will, in the course of nature, all who could explain this error. The title to this tract of land may be litigated a thousand years hence. Is it not desirable that there should be record evidence perpetuated, establishing who was the actual drawer of lot No. 104, in the 7th district of what was originally Early county? And are not these and numerous other reasons, which will readily suggest themselves, sufficient to justify this Court in maintaining the ground already taken, that for the correction of this mistake, in the name of the grantee, a direct proceeding should be instituted?

So far, then, as it was proposed, by this proof, to explain the mistake in the grant, we think the testimony was rightfully rejected; but for another purpose, a portion of it, at least, should have been admitted.

[7.] It is a principle of law, that if the attornment of the tenant is procured by the misrepresentation of the landlord, as to his title, that the tenant will not be estopped by it. Now Mr. Grimsley proves, that in the conversation between Yawn, or Baldree and the Tisons, this mistake in the grant, as to the

baptismal name of Tison, the grantee, was distinctly mentioned; so that there was neither the suppression of truth, nor the suggestion of falsehood, respecting the matter.