## KELLY *v.* STROUSE & BROTHERS.

1. As a general rule, all demurrers to petitions must be filed at the first term.
(*a*) When the petition is so defective that there can be no lawful recovery thereon, an oral motion to dismiss the case, in the nature of a general demurrer, may be made at any time before verdict.
(*b*) An amendment to a petition which materially changes the cause of action, made at any stage of the case, opens the whole petition to demurrer at that time. Aliter, when the amendment makes no material change in the cause of action.
(*c*) When in a given case the defendant orally "moved the court to be permitted to demur" at the trial term, but did not state upon what ground the demurrer would be based, there was no error in overruling the motion.
2. Following the ruling in *Fleming* v. *Roberts*, 114 *Ga.* 634 (3), it is not error to refuse to rule out evidence tending to support the allegations of a petition, irrespectively of the question whether the petition is good in substance or not, or whether the evidence when admitted establishes a right to recover.
(*a*) Under the decision in *Crew* v. *Hutcheson*, 115 *Ga.* 511 (2), the rule is different where evidence is offered in support of the allegations of a plea which is bad in substance.

(b) The two decisions above referred to are not reconcilable upon principle. The decision last referred to seems to be based upon the sounder reasoning and the better practice.

3. While a trial judge may, within the restrictions prescribed in the Civil Code, § 5331, direct a verdict, this court will in no case overrule as erroneous a refusal to do so.

4. A judgment of this court reversing a judgment of nonsuit does not adjudicate that the plaintiff is in law entitled to recover upon the facts alleged in the petition.

(a) The practice of the common law, which authorized a nonsuit in any case when it was clear that in point of law the action was not maintainable, and this too when the objection appeared on the face of the record and might have been taken advantage of by motion in arrest of judgment, if ever of force in this State, does not now prevail.

(b) The nonsuit of the Georgia practice corresponds in its office and effect to the demurrer to the evidence of the common law. On such a demurrer the only question is whether the evidence is sufficient in law to maintain the issue in fact made by the pleadings ; and no exception can be taken to any defect in the pleadings, as the demurrer does not extend to them.

(c) If the evidence supports the issue made by the pleadings, it is proper to overrule a demurrer to the evidence, or a motion for a nonsuit in the nature of such a demurrer, but it is not thereby adjudicated that the pleadings are in law sufficient to authorize a recovery.

(d) " Proving a case as laid " will prevent a nonsuit, and may possibly prevent a motion for a new trial from being granted on the ground that the verdict is contrary to the evidence, but it will not authorize a recovery unless the case as laid so authorizes.

(e) Mere proof of a fact will not in law authorize a recovery unless the existence of such fact so authorizes.

(f) One of the prerequisites to a recovery by a plaintiff is that his pleadings and evidence be in substantial accord, but it is not the only prerequisite.

5. A failure to demur does not confess the action either in law or in fact.

(a) A defendant who passes over, without demurring, a petition which is fatally defective in that it does not set forth a cause of action may still attack the same on this ground by an oral motion to dismiss the case at any time before verdict ; and after verdict, by motion in arrest of judgment made during the term at which the judgment was rendered ; or by assigning error on the judgment by a direct writ of error sued out in due time ; or within three years from the date of the judgment, by motion to set aside.

(b) The object of a direct writ of error in such a case is to review and correct an error of law which is not cured by verdict ; it is less to try the question between the parties than to try the judgment of the court below, to ascertain whether it has been given in conformity to law. " It is not the action to be judged, but the judgment."

(c) On such a writ of error the whole case as shown by the record is before the court of error for inspection and revision.

(d) " Where the defect appears on the face of the declaration, it is settled law that a court of error is bound to notice it."

(e) When it is clear that in point of law the action will not lie, a judgment in favor of the plaintiff will be reversed on writ of error.

(f) As to errors of law, the Supreme Court of Georgia has the same power under a direct writ of error as was possessed by those common-law courts which had jurisdiction to review the judgments of other courts upon writ of error.

6. It is not the office of a motion for a new trial to call in question the legal sufficiency of the pleadings of the plaintiff.    The case of *Francis* v. *Wood*, 75 *Ga.* 648, distinguished.

7. A litigant who fails to take exception to the defects in the pleading of his adversary, "at the proper time and in the proper manner," and permits such a time to elapse that none of the remedies allowed by law for this purpose are available to him, will be forever thereafter estopped from calling in question the soundness, propriety, and in some cases even the legality of the judgment rendered against him.    In such a case the opposite party may always avail himself of such an estoppel.

8. When a case is in limine, and there is no estoppel of which either party may take advantage, whenever the judge sees that a party is about to prevail who in law is not entitled to prevail, that the law is about to be violated, that a grave injustice is about to be done under the forms of law, it is not only the right, but it is the duty, of the judge of his own motion to interpose and give the case such direction as will prevent a result which would be inconsistent with the law.

(a) While it is the duty of counsel to protect the client from wrong and injustice, it is much more the duty of the judge to save the law from being outraged.    Neither the laches of the litigant nor the negligence of counsel will absolve the judge from his sworn obligation to administer the law.

(b) A judge may be constrained to overrule a motion for a nonsuit, or, in some cases, to overrule a motion for a new trial on the ground that the verdict is contrary to the evidence, or to recognize an estoppel operating upon a litigant; but when a case is at the threshold and is completely under the control of the judge, the law under no circumstances requires the judge to give the case a direction which he and every one knows is not founded upon law, reason, precedent, or common sense.    That a trial judge should ever be so situated is a condition of affairs of which the legal mind should not be able to conceive.

(c) Any affirmative ruling by the judge resulting in a final judgment which is inconsistent with the law is erroneous, and may be properly complained of in a direct writ of error assigning error thereon.

9. This court has no authority to decide any question on any writ of error, unless there are in the bill of exceptions "plainly and specifically set forth the errors alleged to have been committed," and a "special assignment of error" raising the question.    The acts of 1889 and 1892 (Civil Code, §§ 5528 (1) and 5584) were in this respect merely declaratory of the law of this State prior to the date of the passage of such acts, as well as of the established common-law practice.

10. If a petition is bad in substance, it is error to direct a verdict in favor of the plaintiff.    If a plea is bad in substance, it is error to direct a verdict in favor of the defendant.

(a) An assignment of error upon the direction of a verdict sufficiently presents for decision the question whether or not, under the pleadings and the evidence, the party in whose favor the verdict was directed is entitled to prevail.

(b) An assignment of error in these words: " the court committed error in directing a verdict for the plaintiff, under the pleadings in the case and the evi-

dence submitted to the jury," is a "special assignment of error" presenting for decision the question whether the facts alleged in the petition and shown by the evidence were sufficient in law to authorize a recovery by the plaintiff.

(c) The ruling in the case of *Phillips* v. *Railway Co.*, 112 *Ga.* 197, should not be extended. Properly limited, that ruling is simply that a general assignment of error upon the direction of a verdict, which does not refer at all to the pleadings, will be construed as raising only the question as to whether the evidence established the allegations of the petition.

11. The written acknowledgment of an existing liability, which in law is equivalent to a new promise to pay, "must contain an unqualified admission of a present subsisting debt which the party is liable to pay, and not merely that the debt was once due."

12. Admissions contained in offers made to settle an unquestioned claim, or one about which there is no pending difference as to the question of liability, are not offers of compromise, and are admissible in evidence. Aliter, where the claim is not admitted, and it is apparent from the writing in which it is claimed that an admission occurs that it is the purpose of the writer by the offer to relieve himself of a claim about which he apparently knows nothing, and the justice of which, while not in terms denied, is not in terms admitted.

13. Applying the principles stated in the two notes immediately preceding, the letters relied on as a written acknowledgment of an existing liability were not in law sufficient for this purpose. Even if such letters, properly construed, could have the effect claimed, the admissions therein were "made with a view to a compromise," and could not be lawfully used against the defendant.

14. Under any view of the case, the petition set forth no cause of action, and the court erred in directing a verdict for the plaintiffs.

Argued November 21, 1902. — Decided January 9, 1903.

Complaint. Before Judge Holden. Jasper superior court. March 25, 1902.

*Fleming Jordan & Son* and *Hall & Wimberly*, for plaintiff in error. *Greene F. Johnson*, contra.

COBB, J. Strouse & Brothers, a partnership, on February 17, 1899, brought suit against J. H. Kelly, alleging that on October 1, 1888, the firm of Kelly Brothers & Porter, of which defendant was a member, executed and delivered to plaintiffs a promissory note for $1,592.45, payable four months after date; that the partnership is now dissolved; but that since the dissolution, and within six years prior to the bringing of this suit, the defendant "has made a written acknowledgment of his existing liability to pay the aforesaid note." The acknowledgment referred to is contained in letters written by defendant to plaintiffs. The entire correspondence is attached to the petition as exhibits and is as follows:

"Baltimore, March 19, 1898.

" Mr. J. H. Kelly, Monticello, Ga.

" Dear Sir :—In reviewing the mercantile agency reports reflecting your present financial standing, we notice that you have been quite successful, and the averment that you have paid off all the old indebtedness of W. A. Kelly and Kelly Bros. & Porter, and now resumed business in your own name, etc. Having no recollection that we ever received a dividend for our claim against your Social Circle firm, we have looked into the matter and find that our impressions are correct. Will you please let us know what your disposition is with reference to our unpaid note of $1,592.45 ?

" Very truly,        Strouse & Bros."

" Monticello, Ga., March 22, 1898.

" Mess. Strouse Brothers, Baltimore, Md.

" Gents:— Your favor of 19th inst. to hand, in reference to the W. A. Kelly Bros. & Porter note. In reply I beg to say that I did not know you had a claim against them. You ask what my disposition is with reference to this note. I beg to say that it is my wish to settle it with you on as reasonable terms as you will accept. Will you please give me a copy of this note with your next favor, naming your terms. I hope you will be as liberal as you can, as all the other creditors have been very liberal.

" Yours truly,        J. H. Kelly."

" Baltimore, March 24, 1898.

" Mr. J. H. Kelly, Monticello, Ga.

" Dear Sir:— Your favor of the 22nd to hand, and agreeable to request find herein copy of note $1,592.45, dated Oct. 1, 1888, hence due Feb. 1st and 4th, 1889, and nine years interest at 6%, aggregating $859.68, total $2,452.13. It is very difficult for us to make a proposition, but our disposition is to be liberal; and upon due reflection we have decided to abate the $859.68, and accept the principal in settlement, which we feel assured you will appreciate.                    " Very truly,        Strouse & Bros."

" Monticello, Ga., March 28, 1898.

" Mess. Strouse Brothers, Baltimore.

Gents : — Replying to your last favor, I beg to say, under ordinary circumstances your kind offer would be regarded as a fair compromise, but as this is an extraordinary case I do not regard it as

liberal as I think the circumstances would warrant. I know you are not controlled by what others have done, but a great many of the creditors did not blame me with the failure, as I had nothing personally to do with it; therefore they felt kindly toward me and asked me to pay them only ten cents on the dollar of original debt, and they would be satisfied, and upon their offer I have worked and paid all the claims I had knowledge of. Please take these facts into consideration and see what you can do better to relieve me of the note in question. I desire to trade with you, provided you will let me, in the future. " Yours truly,     J. H. Kelly."

" Baltimore, April 1, 1898.
" Mr. J. H. Kelly, Monticello, Ga.

" Dear Sir : — Your favor to hand; and in all our experience we have never compromised a debt at 10 cts. on the dollar. We shall be very glad to do business with you, and are willing to take your trade into consideration in connection with the compromise, but must not overlook the fact that you are now in a position to pay in full, and that we are entitled to our money, and the abatement of nearly $1,000 is quite an important amount. We think we have treated you fairly in agreeing to take the face value of the paper, and having liquidated a large part of the old matter at such a low rate of 10%, you are surely warranted in paying ours in full. If it is not convenient for you to pay the whole amount in cash, we will accept one third now, balance payable in installments of 3 & 6 months. Anticipating this will meet your approval,

" Very truly,                    Strouse & Bros."

" Monticello, Ga., April 4, 1898.
Mess. Strouse Bros., Baltimore.

" Gents:—Replying to your favor of 1st, I beg to decline to accept your offer of settlement at present. Your points are well taken, but I think you ought to do a great deal better. Please see if you can't.                " Yours truly,          J. H. Kelly."

It is alleged that in the letters of March 22, March 28, and April 4, the defendant "made such a written acknowledgment of his existing liability to pay [plaintiffs] the aforesaid note as is equivalent in law to a new promise to pay." The defendant answered, admitting that he was a member of the firm of Kelly Brothers & Porter at the time the note was given, but denied that he had ever

made, within six years before the bringing of the suit, any acknowledgment of his liability on the note or any promise to pay the same, and set up as a defense that the cause of action on the note accrued more than six years before the filing of the suit. The case came on to be tried, and at the conclusion of the plaintiffs' evidence the court awarded a nonsuit. This judgment was reversed by this court. *Strouse* v. *Kelly*, 113 *Ga.* 575. At the second trial the plaintiffs introduced in evidence the letters, copies of which are attached to the petition; the note sued on; an admission by defendant that a copy of this note was inclosed in plaintiffs' letter of March 24, 1898; and the testimony of a member of plaintiffs' firm that the consideration of the note was merchandise sold and delivered, that the note had never been paid either in whole or in part, and "that it was the only item of indebtedness between plaintiffs and Kelly Bros. & Porter." "The plaintiffs closed their case, and thereupon defendant moved the court to direct a verdict in his favor, because the letters did not contain such an acknowledgment of the debt as would relieve the statutory bar and entitle plaintiffs to recover. The court suggested that this defense should have been made by demurrer. Whereupon defendant moved the court to be permitted to demur then to the petition as then amended at that term, which motion was refused. Defendant then moved to exclude the letters introduced, on the ground that they contained a proposition to compromise. Whereupon the court made the following ruling, to wit: 'I think that would necessarily come up on demurrer, because they are exhibits to the petition. I would have sustained the demurrer and dismissed the petition, because, in my view of the law, the letters are not such an acknowledgment of the debt as would have entitled the plaintiffs to recover. But here is the trouble: The plaintiffs say in their petition that on those letters they are entitled to recover. There is no demurrer to the petition, and plaintiffs introduce the originals of the papers that are attached to their petition; and the law is, wherever there is no contradiction of the evidence, and wherever the plaintiff's case as he lays it is made out, he is entitled to a verdict. Under the decision in 113 *Ga.*, I see but one verdict in the case, and I will direct a verdict in favor of the plaintiffs for the amount sued for;' which verdict was accordingly taken." To these rulings the defendant excepted, and alleged that the court erred as follows: (1) "In refusing to allow defendant to

demur to the petition of plaintiffs." (2) " In overruling and refusing the request of defendant to withdraw the letters put in evidence by the plaintiffs from the consideration of the jury." (3) ' In refusing to direct a verdict for defendant. (4) " In directing a verdict for the plaintiffs under the pleadings in the case and the evidence submitted to the jury."

1. While the code declares that all demurrers must be filed at the first term (Civil Code, § 5047), still, when the petition does not set forth a cause of action, an oral motion to dismiss the case, in the nature of a general demurrer, may be made at any time before verdict. . Civil Code, § 5046 ; ¯McCook v. Crawford, 114 Ga. 339 (3), and cases cited. In the present case the refusal to sustain the defendant's motion " to be permitted to demur," whether it be treated as a demurrer or as an oral motion to dismiss, can not be reviewed, for the simple reason that the record does not distinctly disclose the grounds upon which it was based. We can not tell from the record upon what ground the defendant desired to demur or move to dismiss. An oral motion to dismiss, as well as a demurrer, must distinctly set forth the grounds upon which it is based. It is true that an amendment " which materially changes the cause of action " opens the petition as amended to demurrer. Civil Code, § 5068; Griffin v. R. Co., 72 Ga. 423 (2). But this rule does not militate against the rule requiring that demurrers should set forth the grounds upon which they are based. In addition to this, the amendment in the present case did not materially change the cause of action. It merely added as an exhibit to the petition a copy of the letter of March 22, 1898, which was already referred to therein, and there was nothing in the letter imposing liability upon the defendant; and even if it did, the letter was evidence merely supporting an allegation of the original petition.

2. In Fleming v. Roberts, 114 Ga. 634 (3), a decision by six Justices, this court held that a plaintiff was entitled to prove the allegations of his petition, without reference to whether, when proved, they constituted a cause of action. There was also a ruling to the same effect in Mayor v. Melton, 115 Ga. 153 (2), a decision concurred in by five Justices. In Crew v. Hutcheson, 115 Ga. 511 (2), it was held by three Justices that it was no error to refuse to allow a defendant to sustain by proof the allegations of a plea which set forth no defense. The writer concurred in all three

rulings, wrote the opinion in *Fleming* v. *Roberts*, and a concurring opinion on this point in *Crew* v. *Hutcheson*. The rulings in the two cases just referred to are utterly irreconcilable upon principle. It now seems to us that what was said in *Crew* v. *Hutcheson* presents the better view of the matter. Why should a litigant be allowed to prove that which when proved amounts in law to nothing ? We do not now see any good reason why an objection to a petition or plea, that it is bad in substance, should not be raised by objecting to evidence being introduced thereunder, or by moving to rule out all evidence introduced in support of the same. See, in this connection, Andrews' Steph. Pl. (2d ed.) 385 (note); Holmes *v*. Ry. Co., 94 Ill. 439 (4) ; Frazer *v*. Howe, 106 Id. 563. This was recognized as a proper practice in *Jossey* v. *Stapleton*, 57 *Ga.* 144 (1), certainly so far as formal defects were concerned. It was there said : " There was no error in overruling the defendant's motion for a nonsuit because the plaintiff's cause of action was not set forth with sufficient clearness and distinctness. If the plaintiff's [defendant's] objection had been well founded, it might have been good cause for special demurrer to the plaintiff's declaration, or to have objected to the plaintiff's evidence under it ; but it was not a good ground for a nonsuit. " See also *McCombs* v. *State*, 109 *Ga.* 500. The only possible ground upon which the rulings in *Fleming* v. *Roberts* and *Mayor* v. *Melton* might be sustained is, that, as a general rule, whatever is alleged in a pleading and is material to the issue therein · raised may be established by competent testimony, and that in ruling upon the admissibility of testimony the court generally has to decide two questions only : does the evidence offered tend to establish a material fact alleged in the pleading ; and if so, is it of such character that a court can consider it under the established rules of evidence ? It might also be said that both in *Jossey* v. *Stapleton* and *McCombs* v. *State* the court was dealing with the admissibility of evidence to prove a fact not alleged ; and that when the fact sought to be established by the evidence is not alleged in the pleadings, this would be a sufficient reason for repelling the evidence. But this line of reasoning is not altogether satisfactory. Evidence which in law establishes nothing can not properly be said to be in any sense material. Neither does such reasoning reconcile the conflict in principle between the two cases first mentioned. Be this as it may, however, the ruling

in *Fleming* v. *Roberts* must be followed until that decision is over-ruled in the manner prescribed by law.    In the present state of our rulings the defendant is debarred of a remedy which is allowed to the plaintiff.    In the present case, however, no substantial harm will result to the defendant by following the decision which now appears to us to be unsound.    It was argued that the motion "to exclude the letters introduced" was properly overruled, for the reasons that the objectionable parts of the letters were not pointed out in the motion.    It is not necessary to determine whether this point was well taken.    See, however, in this connection, *Minter* v. *State*, 104 *Ga.* 744 (2); *Maynard* v. *Association*, 112 *Ga.* 447 (2); *Chambers* v. *Wesley*, 113 *Ga.* 344 (2); *Gully* v. *State*, 116 *Ga.* 527, and the cases cited in these cases.

3. The judge of a trial court may in a proper case direct a ver-dict, but this court will not require him to give a case this direc-tion.    If he sees fit to submit to a jury a case which can have only one lawful termination, he may do so.    See *Western & Atlantic R. Co.* v. *Callaway*, 111 *Ga.* 889; *Owen* v. *Palmour*, 115 *Ga.* 683 (1).

4. It is contended that the effect of the ruling made when this case was here before (113 *Ga.* 575) was that on the facts alleged the plaintiffs were entitled to recover, and that the defendant is con-cluded by that judgment.    The question as to whether the plaintiffs were entitled to recover on the facts alleged has never been passed upon by this court.    That question was not involved when the case was here before.    The plaintiffs had suffered a nonsuit, and in reviewing a judgment of nonsuit the only question is whether the allegata and the probata correspond.    Formerly in England, when a plaintiff voluntarily abandoned his suit, a nonsuit was granted, but this could not be done against his consent.    9 Enc. Laws of Eng. 180.    At a later time it seems that a nonsuit could be prop-erly granted at nisi prius when it was clear in point of law that the action was not maintainable, and this too although the objection appeared on the face of the record and might have been taken ad-vantage of by motion in arrest of judgment.    Tidd's Pr. (3d Am. ed.) *867, citing 1 Campb. 256; 9 Price, 294—296.    See also, in this connection, 4 Minor's Inst. pt. 1, mar. p. 782.    There is now in England no such thing as a nonsuit.    9 Enc. Laws of Eng. 180.

Even if the nonsuit of the English practice ever existed in this State, it ceased to exist soon after this court was established.    In *Big-*

*gers* v. *Pace*, 5 *Ga.* 171, it was held that a nonsuit could be granted against the consent of the plaintiff where the evidence would not support the action. In *Martin* v. *Philips*, 4 *Ga.* 203, it was recognized that a motion for a nonsuit was the proper remedy when there was a variance between the allegation and the proof. Thus early in its history this court adopted the term nonsuit as the appropriate name for that proceeding known to the common-law practice as a demurrer to the evidence. By a demurrer to the evidence the party demurring declares " that he will not proceed because the evidence offered on the other side is not sufficient to maintain the issue." Andrews' Steph. Pl. (2d ed.) § 124. On a demurrer to the evidence the only point in issue is whether the evidence is sufficient in law to maintain the issue in fact made by the pleadings, and on such a demurrer no exception can be taken to any defect in the pleadings, as the demurrer does not extend to them. Gould, Pl. 468 ; 2 Tidd's Pr. (3d Am. ed.) *865 ; Cort *v.* Birkbeck, Doug. 218 ; 3 Estee's Pl. § 4780 a. That the nonsuit of our practice is the same as the demurrer to the evidence of the common-law practice is clearly pointed out by Mr. Justice Bleckley in *Anderson* v. *Pollard,* 62 *Ga.* 50. That learned and accurate jurist there says : " The want of necessary averments in a declaration is not cause for a nonsuit ; for a nonsuit, under our practice, takes place for failure to support the declaration by evidence. We demur to the evidence as insufficient, and move to nonsuit the plaintiff. When a declaration is defective, we demur to it, or move, ore tenus, to dismiss it. And this distinction in practice is matter of substance; for there is a great economy of time and expense in not waiting for the evidence to come in in order to try the sufficiency of the declaration. The object of introducing evidence is not to aid the declaration, but to prove the truth of it. A motion for a nonsuit is aimed at the evidence as compared with what the declaration is, not at the declaration as compared with what it ought to be." The ruling in the case last cited is supported by the earlier rulings, and has been followed in nearly all the later decisions. *Tison* v. *Yawn*, 15 *Ga.* 491; *Jossey* v. *Stapleton*, 57 *Ga.* 144 (1); *Greenfield* v. *Vason*, 74 *Ga.* 126 ; *Reeves* v. *Jackson*, 113 *Ga.* 182 ; *Bray* v. *Railroad Co.*, Id. 308; *Strouse* v. *Kelly*, Id. 575; *Flewellen* v. *Flewellen*, 114 *Ga.* 403; *Barge* v. *Robinson*, 115 *Ga.* 42; *McClendon* v. *Phosphate Co.*, 100 *Ga.* 221. The provisions of the Civil

Code, § 5347, do not change this rule, being merely a codification of decisions, none of which conflict with it, and one (*Tison* v. *Yawn*, supra) directly supports it.    See, in this connection, Civil Code, § 4995.   The ruling in *Alford* v. *Hays*, 87 *Ga.* 155, is in conflict with the earlier rulings and must yield to them.    The statement by Mr. Justice Crawford in *Zettler* v. *Atlanta*, 66 *Ga.* 195, that " a nonsuit should be awarded where the facts and law will not justify a verdict," though a sound proposition under the English practice as it once existed, is in conflict with the earlier decisions of this court, and must also yield to them.    The term " nonsuit," as used in superior court rule 11 (Civil Code, § 5642), is to be taken in the sense of the non-pros. of the English practice or the dismissal of our practice.    See Heard's Steph. Pl. 109.    When a court passes upon a motion for a nonsuit it decides only one question, that is, do the allegation and the proof correspond ?    In sustaining such a motion the court does not hold that the plaintiff is not entitled, under the law, to recover on the facts alleged ; neither does the overruling of the motion decide that the plaintiff is entitled under the law to recover.    The right to recover under the facts alleged is not involved in the decision of such a motion. If a plaintiff " proves his case as laid," he is entitled to prevail as against a nonsuit ; but it by no means follows from this that he is entitled to recover on the facts " as laid."    Merely proving a fact will not in law authorize a recovery unless the existence of the fact proved gives a legal cause of action.    This matter will be again referred to in another part of this opinion.

5. In what way can the defendant properly call in question the right of the plaintiff to recover on the facts alleged in the petition ? Or, otherwise stated, what are the appropriate remedies available to a defendant who claims that the plaintiff is proceeding against him on a petition which wholly fails to set forth a cause of action ? He may demur at the first term, if he sees proper, but he is not bound to raise the objection at this time and in this way.    The provisions of the code which declare that " all demurrers . . shall be filed . . at the first term," and that " all issues of law shall be raised by demurrer," (Civil Code, §§ 5047, 5049) have never been held to be mandatory except as to demurrers which go to the form of a pleading which is otherwise good in substance.    It has been held that, under the latter provision of the code above cited, objec-

tion to the sufficiency of a petition can not be raised by answer. *Jones* v. *McNealy*, 114 *Ga.* 393. A failure to demur does not confess the cause of action alleged, either in law or in fact. As will hereafter appear, no question as to the effect of passing over a petition fatally defective in substance without demurring to the same was necessarily involved in *Savannah, Florida & Western R. Co.* v. *Ladson*, 114 *Ga.* 762, *Third National Bank* v. *Ry. Co.*, 114 *Ga.* 890, and *Pittsburgh Co.* v. *Smith*, 115 *Ga.* 764. From what has already been said it is apparent that no such question was required to be decided in *Reeves* v. *Jackson*, 113 *Ga.* 182. It follows that all that is said on this subject in any of these cases is obiter and not to be treated as binding. The defendant may, at any time before verdict, make an oral motion to dismiss the case for the want of a cause of action. *McCook* v. *Crawford*, 114 *Ga.* 337; *Crew* v. *Hutcheson*, 115 *Ga.* 534—535. See also *Fleming* v. *Roberts*, 114 *Ga.* 639; *Greenfield* v. *Vason*, 74 *Ga.* 128. A motion in arrest of judgment may be made during the term at which the judgment was rendered, and a motion to set aside the judgment may be made at any time within three years from the date of the judgment. In *Fleming* v. *Roberts*, 114 *Ga.* 639, the writer unnecessarily takes occasion to say that he knows "of no other way in which the question of the legal sufficiency of a petition can be properly brought before the court" than the four ways above enumerated. He will not now undertake to say in how many other ways it may be done, but it is certain that there is undoubtedly one other mode than those enumerated, and that is by direct writ of error complaining of the judgment rendered on the alleged insufficient pleading. A writ of error "lies where a man is grieved by an error in the foundation, proceeding, judgment, or execution of a suit." 3 Bacon's Ab. (Bouv. ed. 1848) tit. Error, p. 320; 2 Tidd's Pr. (3d Am. ed.) *1134. The object of this writ is not to try the question between the parties; it is rather to try the judgment of the court below, to ascertain whether it has been given in conformity with law. 3 Bacon's Ab. (Bouv. ed. 1848) tit. Error, p. 321. "The object of the writ of error is to review and correct an error of the law which is not amendable at common law or cured by any of the statutes of jeofails. . . It is considered a new suit, and it is less an action between the original parties than a question between the judgment and the law. It is not the action which is to be judged, but the

judgment." *Allen* v. *Savannah,* 9 *Ga.* 293. See, in this connection, *Harris* v. *State,* 2 *Ga.* 211; *Tarver* v. *Rankin,* 3 *Ga.* 210 (1).

The purpose and scope of a writ of error is clearly set forth in Stephen's Principles of Pleading, a work which was highly commended by Judge Lumpkin in *Harris* v. *State,* supra. The author just referred to, after stating that after final judgment the unsuccessful party may bring a writ of error, and explaining the difference between the two kinds of writs of error, the one requiring the judges to review their own judgments, and the other requiring them to send the record to a court of appellate jurisdiction, in referring to the writ of error last mentioned, says: "But the most frequent case of error is when, upon the face of the record, the judges appear to have committed a mistake in the law. This may be by having wrongly decided an issue in law brought before them by demurrer; but it may also happen in other ways. As formerly stated, the judgment will, in general, follow success in the issue. It is, however, a principle necessary to be understood, in order to have a right apprehension of the nature of writs of error, that the judges are, in contemplation of law, bound, before in any case they give judgment, *to examine the whole record;* and then to adjudge either for the plaintiff or defendant, according to the legal right, as it may on the whole appear—notwithstanding, or without regard to, the issue in law, or fact, that may have been raised and decided between the parties; and this, because the pleader may from misapprehension have passed by a material question of law, without taking issue upon it. Therefore, whenever, *upon examination of the whole record,* right appears on the whole not to have been done, and a judgment appears to have been given for one of the parties when it should have been given for the other, this will be error in law. And it will be equally error, whether the question was raised on demurrer—or the issue was an issue in fact—or there was no issue; judgment having been taken by default, confession, &c. In all these cases, indeed, except the first, the judges have really committed no error; for it may be collected, from preceding explanations, that no record, or even a copy of the proceedings, is actually brought before them, except on demurrer; but, with respect to a writ of error, the effect is the same as if the proceedings had all actually taken place and been recorded in open court, according to the practice of ancient times. So, on the same principle,

there will be error in law, if judgment has been entered in a wrong form inappropriate to the case; although, as we have seen, the judges have in practice nothing to do with the entry on the roll. But, on the other hand, nothing will be error in law that does not appear on the face of the record; for matters not so appearing are not supposed to have entered into the consideration of the judges. Upon error in law, the remedy is not by writ of error coram nobis (for that would be merely to make the same judges reconsider their own judgment), but by a writ of error, requiring the record to be sent into the other court of appellate jurisdiction, that the error may be there corrected—and called a writ of error generally." Heard's Steph. Pl. 119 – 121. The same author also says (p. 146): " And in the first chapter it was shown that even after an issue in fact, and verdict thereon, the court is bound to give judgment on the whole record, and therefore to examine the sufficiency in law of all allegations through the whole series of the pleadings; and accordingly, that advantage may often be taken by either party of a legal insufficiency in the pleading on the other side, either by motion in arrest of judgment, or motion for judgment non obstante veredicto, or writ of error, according to the circumstances of the case." See also 4 Minor's Inst. pt. 1, mar. p. 851, pt. 2, mar. p. 895 (2 e).

On writ of error the whole case as shown by the transcript is before the appellate court for inspection and review. Scott *v.* Sanford, 60 U. S. 393 ; Bank *v.* Smith, 24 U. S. 171 ; Garland *v.* Davis, 4 How. (U. S.) 142. " Where the defect appears on the face of the declaration, it is settled law that a court of error is bound to notice it." Porter, J., in Maher *v.* Ashmead Co., 30 Pa. St. 344. See also Rushton *v.* Aspinwall, Doug. 683 ; Town of Canterbury *v.* Bennett, 22 Conn. 623 ; Pearl *v.* Rawdin, 5 Day (Conn.), 244; Putnam *v.* Lamphier, 36 Cal. 152; Garland *v.* Davis, 4 How. (U. S.) 142. When it is clear that in point of law the action will not lie, a judgment in favor of plaintiff will be reversed on writ of error. Tidd's Pr. (3d Am. ed.) *867; Aldige *v.* Knox, 16 La. Ann. 180; 3 Bacon's Ab. (Bouv. ed. 1848) 320 – 1. See also, in this connection, Brown's Heirs *v.* Wilson, 12 B. Mon. 100. This court was originally established as a court for the " correction of errors in law and equity." 1 *Ga.* vii. It is in the present constitution described as a court for the " correction of errors." Civil Code, § 5836. Whether the omission of the words " in law and equity"

enlarges at all the jurisdiction of the court it is not now necessary to determine. It certainly has the power to correct the errors of law of the courts whose decisions are reviewable by writ of error. It is also not only within the authority of the court, but it is its duty, when a case is before it on a direct writ of error complaining of a judgment, to reverse the judgment when it is apparent from the record that in point of law the action was not maintainable, if the judgment was in favor of plaintiff, or the plea constituted no defense, if the judgment was in favor of the defendant. See, in this connection, Andrews' Steph. Pl. (2d ed.) 270. Sergeant Stephen, in his work on Pleading above referred to, says that " it is a great principle of law, that the decision of a jury upon an issue of fact is, in general, irreversible and conclusive;" and that, " where an issue in fact has been decided, there is (as formerly observed) no appeal in the English law from its decision, except in the way of motion for a new trial ; and its being wrongly decided is not error, in that technical sense to which a writ of error refers." Heard's Steph. Pl. 96, 118.

It may well be doubted whether the framers of the law under which this court was originally organized ever intended that it should have jurisdiction by writ of error, directly or indirectly, to review the finding of a jury on an issue of fact. In the case of *Kelly* v. *State*, 49 *Ga.* 16, Judge McCay said : " Indeed it is only by a sort of fiction that we have jurisdiction at all over a verdict of the jury upon the facts. . . An ordinary mind finds it difficult to discover an error of law in a judgment turning exclusively upon facts. Whether a certain amount of testimony does or does not, assuming the testimony all to be legal, establish a certain fact, would seem to have none of the elements of a legal question in it." If it really was never intended that this court should review the decision of a jury on an issue of fact, the writer, speaking only for himself, takes this occasion to remark that it should be, for many reasons, a source of regret that the court ever assumed this jurisdiction. Justice Gantt of the Supreme Court of Missouri, in a recent address, said : " Whatever criticisms have been indulged in the past on the failure of juries to reach exact justice, it is at least true that their *recorded errors* number far less than those which the highest courts have committed and confessed in their innumerable overruling cases. As for myself, the longer I live and

the more closely I observe the result of jury trials, the more I am inclined to agree with that English writer who says that ' when we consider the impartiality required and enforced in returning juries, and the properties which the law requires in every juryman when returned, we may almost doubt whether human wisdom is capable of providing a more perfect method of determining the truth of facts consistent with the liberties of a free people ; at least we may conclude that it has not hitherto done it.' " 15 Virginia Bar Asso. Rep. (1902), 181 – 2. What is said by the learned justice commends itself very strongly to the writer. Juries make mistakes, but their mistakes are probably no more numerous or no more disastrous to parties and the public than the mistakes of judges who assume to decide issues of fact. When a jury has decided an issue of fact, and the trial judge, on motion for new trial, has really exercised that discretion which the law gives him in reference to reviewing the evidence, there should be no further review of the finding of fact. The time that this court is now required to devote to the investigation of questions of fact could be much more profitably spent in the investigation of errors of law which are in reality errors of law. However, the authority of this court to review in an indirect way the decision of a jury on an issue of fact was thoroughly recognized and firmly established at the time of the adoption of the present constitution, and the omission of the words "in law and equity " from the clause in that instrument defining the jurisdiction of this court may be a matter of some significance. As to errors of law, this court certainly has the same power under a direct writ of error as was possessed by those common-law courts which had jurisdiction to review the judgments of other courts upon writ of error.

6. It may be said, however, that the conclusion just stated is not in accord with some of the prior rulings of this court. In *Savannah, Florida & Western Ry. Co.* v. *Ladson*, 114 *Ga.* 762, *Third National Bank* v. *Ry. Co.*, 114 *Ga.* 890, and *Pittsburgh Co.* v. *Smith*, 115 *Ga.* 764, this court affirmed judgments in favor of plaintiffs and refused to consider the question as to whether under the facts alleged in the different petitions the plaintiffs were under the law entitled to recover. An examination of these cases will show that they were before this court on exceptions to the overruling of motions for new trials, and everything said in any of them

must be read in the light of this controlling fact. In no work on pleading that we have examined have we been able to find enumerated or referred to as a ground for a new trial that the plaintiff's declaration, count or petition, as the case may be, is fatally defective. See 4 Chitty's Gen. Pr. 29 et seq.; 2 Tidd's Pr. (3d Am. ed.) *906 et seq.; 3 Estee's Pl. § 4847 et seq.; Ship. Com. Law Pl. 113–116; Andrews' Steph. Pl. (2d ed.) 228; 4 Minor's Inst. pt. 1, mar. p. 756. It never has been at any place where the common law prevails, so far as we are now advised, the office of a motion for a new trial to call in question the legal sufficiency of the pleadings of the plaintiff. See, in this connection, Town v. Bennett, 22 Conn. 623; Pearl v. Rawdin, 5 Day (Conn.), 244; *Rucker* v. *State*, 114 *Ga.* 13 (1); *Boswell* v. *State*, 114 *Ga.* 40 (2); *Eaves* v. *State*, 113 *Ga.* 750 (7); *Roberts* v. *Keeler*, 111 *Ga.* 181, and cases cited; *Hill* v. *State*, 112 *Ga.* 32; *Hill* v. *State*, 112 *Ga.* 400. The numerous decisions of this court, that a judgment overruling a demurrer to the plaintiff's petition, or a demurrer to an indictment, can not be properly complained of in a motion for a new trial, support in principle the view above presented. There is, in the case of *Francis* v. *Wood*, 75 *Ga.* 648, when the peculiar facts of that case are considered, nothing to conflict with the rule that a new trial will not be granted on the ground that the plaintiff's petition does not set forth a cause of action. In that case the petition contained four counts, three good, one bad. The case went to trial upon the petition as a whole, and there was a general verdict for the plaintiff. It was apparent that the verdict was largely influenced by the bad count, but how much it was impossible to tell. Under such circumstances, a motion for a new trial would seem to be the only remedy after verdict. A new trial should be had in order that there may be another trial on the good counts, the verdict rendered not being supported by such counts, and it being impossible to eliminate the illegal part of the verdict. If all of the counts had been bad, the ruling would necessarily have been different. A judgment granting a new trial in legal effect requires a trial to be had upon the plaintiff's pleadings as they then exist. No court should ever require a trial upon pleadings which would not authorize a lawful judgment. In *Haiman* v. *Moses*, 39 *Ga.* 708, it appears to have been held that a fatal variance between the plaintiff's allegation and proof could not be taken advantage of by motion for new trial. Even if the ruling goes to this extent, it is not now necessary to question it.

There are cases in which the legal sufficiency of pleadings has been called in question by requests to charge, and by objections to charges which were made the grounds of a motion for a new trial, and this has been apparently treated as a proper practice. See *Crummey* v. *Bentley*, 114 *Ga.* 746 (3); *Ala. Ry. Co.* v. *Guilford*, Id. 628 (4). The question of practice was, however, not raised in these cases, and what is said therein on this subject is not authoritative. It is clear that there may be a direct writ of error assigning error on charges and refusals to charge relating to the legal sufficiency of the pleadings, but it is not now necessary to determine whether such error can be properly complained of in a motion for a new trial. See, in this connection, *Crew* v. *Hutcheson*, 115 *Ga.* 533 – 4. It has been suggested that the code gives the judge the right to grant a new trial " in any case when the verdict of the jury is found contrary to . . the principles of justice and equity" (Civil Code, § 5477), and that this gives the judge, in passing on a motion for a new trial, more authority over the case than could have been exercised at common law, and that under this power it is not only the right but the duty of the judge to grant a new trial in any case when under the law the successful party is not for any reason entitled to prevail. It is, however, not necessary in the present case to determine this question. As to some of the appropriate methods of calling in question the sufficiency of the defendant's pleadings, see *Crew* v. *Hutcheson*, 115 *Ga.* 524 et seq. In some particulars what is said in that case conflicts with the rulings in *Hollis* v. *Nelms*, 115 *Ga.* 5, and *Stromberg Co.* v. *Bisbee*, 115 *Ga.* 346 ; but after much investigation and anxious consideration, it is the opinion of the writer that the sounder and better view is that presented in *Crew* v. *Hutcheson*, and that the rulings referred to, being concurred in by five Justices only, should not be followed. See in this connection Tidd's Pr. (3d Am. ed.) *564 – 5 ; Hitchcock *v.* Haight, 2 Gill. (Ill.) 604 ; Garland *v.* Davis, 4 How. (U. S.) 142. There is nothing said in *Crew* v. *Hutcheson* which conflicts with the ruling in *Brantley* v. *Dempsey*, 24 *Ga.* 341. In that case it was held that it was too late after verdict to raise the objection that a plea of set-off was not allowable in the case. The plea itself, so far as the record discloses, was a perfect plea of set-off, good in form and substance, and the only objection was that such a plea was not allowable in the particular case. Under our system it is certainly too late to raise such a point after a trial on the plea.

7. Having now referred to the various ways in which a defendant may call in question the sufficiency of the plaintiff's pleadings, it is to be determined what is the effect of a failure to take advantage of these different remedies.   It is essential that judicial proceedings shall be conducted with at least some regard to formality, and that persons against whom such proceedings are had shall be required to appear and object within a given time and in a given manner, or shall be thereafter barred from ever calling in question the propriety, the soundness, and it may be, in some cases, the legality of the judgment.   A litigant may by his own negligence or ignorance estop himself from showing that a judgment rendered should never have been rendered ; and this estoppel operates not only as to matters which were questionable, but also as to those about which there could have been no question if a timely objection had been made.   That is, if the court has jurisdiction of the subject-matter and of the person, and a timely objection is not made to the pleading, and a judgment is rendered which is acquiesced in until the time for exception or objection has expired, the parties are forever estopped from calling in question the propriety and soundness of the judgment. In other words, if there is a judgment which either in terms or in effect says that the petition sets forth a cause of action, and this judgment is rendered by a court which has jurisdiction of the person and also jurisdiction to determine whether the facts alleged constitute a cause of action, then the judgment, after the time for objection has expired, conclusively estops the parties from ever saying that the petition sets forth no cause of action; and this notwithstanding there would have been no question as to the petition being held fatally defective if objection to the same had been made in due time.   All this results from the doctrine of estoppel, and the estoppel rests upon either ignorant laches or negligent delay.   When a defendant has failed to avail himself, " at the proper time and in the proper manner " (see *Stroup* v. *Sullivan*, 2 *Ga.* 275) of the methods prescribed by law to prevent a judgment from being rendered or enforced against him upon a petition that does not set forth a cause of action, such judgment will, after the lapse of time fixed by law for calling the same in question, be valid and binding and enforceable, if the court which rendered it had jurisdiction of the subject-matter and of the person of the defendant.   If the defendant calls in question

the sufficiency of the petition by demurrer, as he has a right to do, and the court renders an erroneous decision holding that the petition sets forth a cause of action, when in truth it does not, and the defendant acquiesces in this decision, of course no one will contend that, after the time allowed by law has expired for bringing under review this erroneous decision, the defendant can be heard to say that the petition sets forth no cause of action. If the defendant makes a motion at the trial term to dismiss the case for want of a cause of action, and this motion is overruled, as long as this judgment stands unreversed he is precluded from calling in question the sufficiency of the petition. And so it would be if he moved in arrest of judgment, or made a motion to set aside the judgment, and these motions were overruled and the decision acquiesced in; or if he had sued out a writ of error, and the same was abandoned or dismissed, or the judgment affirmed. If he desires to attack the petition, he must do so within the time and in the manner provided by law; and if he does this and acquiesces in the judgment, he is bound by it without regard to what is the real truth of the case in regard to the question in controversy. If he allows the time to lapse within which the law permits him to avail himself of these remedies, and is thereafter precluded from raising any question as to the sufficiency of the petition, he is in no worse position than if he had raised the question and acquiesced in an erroneous decision thereon. The law must always give a person sued a right to be heard, and must prescribe a reasonable time within which he may be heard, but it may at the same time prescribe the manner in which his objection to the plaintiff's right to proceed against him shall be brought before the court; and if the manner prescribed by law and the time within which the objection can be raised are both reasonable, and the defendant fails to avail himself of the right to be heard within the time and in the manner thus prescribed, the fact that a judgment could not have been rendered if he had availed himself of one of the methods fixed by law to prevent the rendition of the judgment does not afford any sufficient reason for giving him another opportunity to be heard on a matter upon which he has lost the right to be heard by his own negligence or ignorance. The rulings of this court are in accord with the principles above alluded to, and are all based upon the salutary rule, that when the law of the land affords to a litigant an

opportunity to be heard and he, fails to avail himself of that opportunity, he is bound by the judgment of a court which has jurisdiction of the subject-matter and the person, notwithstanding the fact that if objection had been made in due time and in the proper manner no such judgment would have been rendered. If the petition sets forth no cause of action, it is certain that the defendant may make the point by demurrer before trial, by motion to dismiss at the trial term, or by motion in arrest of judgment at the term at which the verdict is rendered, or by direct writ of error within the time prescribed by law, or by motion to set aside the judgment at any time within three years from the rendition of the judgment. There may possibly be other ways, but we are clear that this objection can not be made by motion for nonsuit. It has been in some jurisdictions held that this objection could be raised by objecting to all the evidence offered by plaintiff, or by motion to rule out all the plaintiff's evidence. The writer now sees no valid objection to this practice; but under our previous rulings this remedy is not now available in this State. See *Fleming* v. *Roberts* and *Mayor* v. *Melton*, supra.

8. What is the power of a judge when a case is in limine and nothing has been done which would authorize either litigant to claim an estoppel on the other as to the sufficiency of his pleadings? When the case is at this stage, can there ever arise any set of circumstances which would require the judge to direct a verdict for the plaintiff when it is clear that he is not entitled to recover, or a verdict for the defendant when it is equally clear that the plea relied on constitutes in law no defense to the action? We do not think so. Whenever a judge sees that a litigant is about to prevail when in law he is not entitled to prevail, it is not only his right but his duty to prevent such a result. The judge should always interpose whenever he sees that the law is about to be violated or a grave injustice is about to be accomplished under the forms of law. It is the duty of counsel to protect their clients from wrong and injustice. It is the duty of the judge to protect the law from being outraged. Neither the laches of the litigant, nor the negligence of counsel, unless the opposite party has thereby secured the right to claim an estoppel, will absolve the judge from his sworn obligation to see that the law is administered. See the forceful remarks on this subject by Judge Nisbet in *Moody* v. *Davis*, 10 *Ga.* 403. See

also, in this connection, *Crew* v. *Hutcheson*, 115 *Ga.* 528; *Good-rum* v. *State*, 60 *Ga.* 509 (3); *Moore* v. *Cameron*, 12 *Ga.* 266 (last paragraph of opinion). A judge may be constrained to overrule a motion for nonsuit, and possibly a motion for new trial, when he knows that the plaintiff has no cause of action; but he will never be required to render or permit to be rendered a judgment in favor of a party who is in law not entitled to prevail, when the case is in limine and no estoppel is operating. At any time before verdict he may dismiss the case, strike the plea, or give the case such appropriate direction that the result will be consistent with the law applicable to the facts involved. See *McCook* v. *Crawford*, 114 *Ga.* 337, and cases cited; *Crew* v. *Hutcheson*, supra. A court of last resort which, when not constrained by positive express legislative enactment, should lay down the rule that a trial judge, at the outset of a case, when nothing has been done by either party having in law the effect to take the case from his absolute control, must not only permit but require the case to take a direction which is utterly at variance with the law, would justly become a by-word and reproach among an intelligent bar. The court of last resort owes to itself the duty not to make a ruling which would bring the trial judge into such a condition. A judge when in full control of the case having to stultify himself by declaring that a judgment should be rendered which is well known to him and every one not to be founded upon law, reason, precedent, or common sense, is a condition of which the legal mind should not be able to conceive. A party may estop himself from calling in question a bad judgment, an erroneous judgment, a judgment that ought not to have been rendered, a judgment that could not have been rendered if an objection had been made " at the proper time and in the proper manner;" but that a court should be required to affirmatively hold that such a judgment must be rendered by it is not the law, never has been the law, and never ought to be the law. The mere suggestion of such an idea shocks the legal mind. If a court by any affirmative ruling holds that a judgment should be rendered in favor of a party who is in law not entitled to prevail, such a ruling, no matter in what way it may be made, is an erroneous ruling, and may be reversed on writ of error directly assigning error thereon. We would be far from candid if we did not admit that some of the various expressions in different cases, if car-

ried to their logical extent, would lead to a conclusion different from that above stated. It is apparent from the record that the able and learned trial judge whose decision is under review was misled by some of these expressions. We have in some cases been misled ourselves by our own expressions. When all the cases in which such expressions appear are critically examined in the light of the questions then involved, we do not think there will be found any authoritative ruling which conflicts with the views herein presented.

None of the language used in the foregoing division of this opinion, dealing with the question of the power and duty of the trial judge in reference to a case which is without legal merit, is at all to be construed in any way as a reflection upon our brother of the circuit bench whose decision we are now reviewing. What is said is simply an enunciation of well-settled general principles which it is deemed wise by us to again promulgate, in the light of some expressions of our own which misled members of the bar as well as a number of the trial judges of the State. While we have been constrained to reverse the judgment in the present case, the fact of reversal under such circumstances, or any language used in reaching the conclusion that a reversal was demanded, is not to be taken as in the slightest manner indicating that the conduct of the trial judge in this case, as on all occasions, was not that of a conscientious judge who was in good faith endeavoring to follow the rulings of this court as he understood them.

9. Let it be conceded as established that this court can on direct writ of error pass upon the question as to whether the pleadings authorize the verdict, it is then said that, under the acts of 1889 and 1892 (Civil Code, §§ 5528 (1), 5584), this can be done only upon a bill of exceptions containing " a special assignment of error," that is, one in which is "plainly and specifically set forth the errors alleged to have been committed." The acts referred to laid down no new rule in Georgia on this subject. It was the law prior to these acts that the " bill of exceptions shall specify plainly the decision complained of and the alleged error." Civil Code, § 5527. The act organizing this court provided that every case should be decided " upon the record and bill of exceptions, on the ground therein specified, and on no other grounds." See act of 1845 in 1 *Ga.* ix and x. This act, so far as relates to this rule,

was only declaratory of the established common-law practice. In Bacon's Abridgement we find that " In a writ of error it is no good assignment of error, quod in omnibus erratum est ; for the court is not bound to inquire of the errors, if the party does not show them." 3 Bac. Ab. (Bouv. ed. 1848) tit. Error, 368.    See also 2 Enc. P. & P. 942.    It will thus be seen that the rule requiring special assignments of error is probably as old as courts of error themselves. Under our practice, we must look to the bill of exceptions for the assignment of error.    " Where the error alleged is in the granting or denying of a new trial, one assignment of error is sufficient to reach all the grounds of the motion on which the grant or refusal was based."    Supreme Court Rule 6, Civil Code, § 5605.    Each ground of the motion is thus treated as if it had been set out in full · in the bill of exceptions.  The same rules which determine whether an assignment of error in a direct bill of exceptions is sufficiently specific would seem to be alike applicable to cases where the assignment is in the motion in fact, but, under the rule quoted, is in the bill of exceptions in legal contemplation.    It is well settled; not only in this State, but in other jurisdictions where the common law prevails, that a ground of a motion for a new trial, that the verdict is contrary to law, is too general and presents no legal question for decision.    *Jenkins* v. *State,* 50 *Ga.* 258 ; *Mayor* v. *Johnson,* 84 *Ga.* 279 ; *Roberts* v. *Keeler,* 111 *Ga.* 181 (6) ; *Eaves* v. *State,* 113 *Ga.* 758 (7) ; *Napier* v. *Burkett,* 113 *Ga.* 607 ; *Wight* v. *Schmidt,* 111 *Ga.* 858 ; Maskewitz v. Pimentel, 83 Cal. 450 ; Swartout v. Willingham, 31 Abb. New Cas. (N. Y.) 66 ; Gilberson v. Miller, 4 Utah, 46 ; Howcott v. Kilbourn, 14 Ark. 213 ; Winter v. Judkins, 106 Ala. 259 ; Jones v. Wocker, 90 Ky. 230 ; Carlin v. Baird (Ky.), 13 S. W. 434 ; Sellars v. Railway Co. (Ky.), 29 S. W. 332 ; Trent v. Colvin (Ky.), 35 S. W. 914.    See also, in this connection, *S., F. & W. Ry. Co.* v. *Hardin,* 110 *Ga.* 434 ; *Hill* v. *State,* 112 *Ga.* 32 ; *Hill* v. *State,* Id. 400.    The ruling in *Brock* v. *State,* 28 *Ga.* 371, to the effect that the plaintiff in error could make in the bill of exceptions one assignment of error on a judgment, and in this court rely on another ground of error not mentioned in the bill of exceptions, is not in accord with the other rulings of this court, both prior and subsequent, and in *Roberts* v. *Keeler,* supra, attention was called to the fact that this decision had never been followed.

10. The assignment of error in the present case is in the following words: " The court committed error in directing a verdict for the plaintiffs under the pleadings in the case and the evidence submitted to the jury.". Can this assignment of error, fairly interpreted, mean anything other than that the verdict directed was wrong for the reason that the pleadings of the plaintiff did not authorize a recovery. In *Phillips* v. *Railway Co.*, 112 *Ga.* 197, the judge directed a verdict for defendant and the assignment of error was as follows: " Plaintiff excepted to said ruling of the court, and now excepts, and assigns the same as error." It was there held that under such an assignment of error the only question presented was whether the evidence, taken most favorably for the plaintiff, established the material allegations of the petition. It will be noted that this assignment of error does not at all refer to the pleadings. It now seems to us that the assignment of error was in that case given too restricted a meaning. We think the better and the correct rule in such cases is that laid down by Mr. Presiding Justice Lumpkin in *Anderson* v. *Walker*, 114 *Ga.* 505, where it was ruled that " an assignment of error upon the direction of a verdict in favor of a plaintiff sufficiently presents for determination the question whether or not, under the pleadings and evidence, that party was entitled to a recovery." This ruling was referred to approvingly by Mr. Justice Fish in *Waller* v. *Hogan*, 114 *Ga.* 384 (1). The statement by Mr. Chief Justice Simmons, in *Eaves* v. *State*, 113 *Ga.* 758, that, " after going to trial upon the merits without objection to the indictment, the accused could not properly ask the direction of a verdict in his favor because of the insufficiency of the indictment," is not supported by the authorities. The cases of *Bray* v. *Railway Co.*, 113 *Ga.* 308, and *Strouse* v. *Kelly*, 113 *Ga.* 575, cited to sustain this proposition, do not now seem to us to have this effect. In each of those cases the only question was whether it was erroneous to grant a nonsuit, and we think we have already shown that in the decision of such a question the sufficiency of the pleadings is not at all involved. In the *Bray* case it was held to be error to grant a nonsuit when " the plaintiff proves his case as laid." In a number of other cases the phrase, " proving a case as laid," and similar expressions, appear; but it has never been held by this court that merely " proving a case as laid" will authorize a recovery, when the " case as laid " would not be sufficient for this pur-

pose.. "Proving a case as laid" will prevent a nonsuit, and may possibly prevent a new trial from being granted on the ground that the verdict is contrary to the evidence; and we do not think any of our rulings, properly understood, go any further than this. See, in this connection, *Reeves* v. *Jackson*, 113 *Ga.* 182 (3) ; *S., F. & W. Ry. Co.* v. *Ladson*, 114 *Ga.* 762 ; *Third Nat. Bank* v. *Railway Co.*, 114 *Ga.* 892 ; *Flewellen* v. *Flewellen*, 114 *Ga.* 403. One of the prerequisites to a recovery by a plaintiff is that his pleading and evidence be in substantial accord, but it is not the only prerequisite. The ruling in *Phillips* v. *Railway Company*, having been made by six Justices, must be followed until overruled in the manner prescribed by law ; but that ruling does not control in the present case, for the reason that, properly limited, it was a holding merely that a general assignment of error on a judgment directing a verdict, which does not refer to the pleadings, presents for decision only the question whether the allegation and the proof correspond. Where the assignment - says, as it does in this case, that the judgment is wrong because the pleadings do not authorize a recovery, a very different question arises, and that is, whether under the pleadings the plaintiff has a legal right to recover. If a petition is bad in substance, it is error to direct a verdict in favor of plaintiff, no matter what the proof may be. If a plea is bad in substance, it is error to direct a verdict in favor of the defendant. Such error can be properly considered under an assignment of error alleging that the court erred in directing a verdict under the pleadings and evidence in the case.

If it should appear that in the foregoing discussion recent decisions of this court have been criticised with great freedom, it must be remembered that the criticism falls as heavily upon the writer as upon his brethren. In every case which has been the subject of an expression of dissatisfaction the writer concurred in the judgment and in the reasoning upon which it was founded, and in some of them the opinions were his own work. If the length of this opinion should bring forth the criticism that too much time, labor, and attention have been spent upon a mere question of practice, let it be remembered that upon the decision of mere questions of practice the rights of property turn, and the citizen loses his liberty and sometimes his life. The statement has been made that at the present day not less than forty per centum of the cases passed upon by

courts of last resort either turn upon or involve questions of practice. If this statement is at all inaccurate, it would seem to be for the reason that the percentage is too low. Under such conditions it certainly behooves the judges of a court of last resort to be as diligent, as painstaking, and as conscientious in passing on cases involving questions of practice as on those involving questions of substantive law. Courts of last resort are composed of human beings, and are liable to make mistakes both in rulings and reasoning, and unguarded and ill-considered expressions are as apt to emanate from them as from others. In this connection let it be remembered that this court is now, under the mandatory requirements of the constitution, hearing and disposing of more than one thousand cases annually, and for the past six years the number heard and disposed of each year has not been less than eight hundred. ˙ Under such conditions it should not be a matter of surprise to the intelligent and well informed, when the judges, in their conscientious efforts to tread in the path of the true law, should have sometimes to admit their wanderings from that path, by recalling their words, criticising their conclusions, unmasking the fallacy of their reasoning, and in some cases entirely overruling their former decisions. A court of last resort should, of all courts, be consistent, but consistent with the true law and not with its own errors.

11-14. As we have reached the conclusion that the controversy involved in the present case is properly before us, we will now consider the case on its merits. The note sued on is barred on its face. It is admitted in the petition that it is barred, and the pleader seeks to relieve this bar by an averment that there has been, within six years prior to the filing of the petition, a written acknowledgment of an existing liability which is in law equivalent to a new promise to pay. It is alleged that this acknowledgment is contained in a correspondence which is set forth in the statement of facts preceding this opinion. Let each of these letters be considered in the light of this claim. Is there anything in the letter of March 22, 1898, which would be equivalent to a new promise? The rule is that the acknowledgment shall " contain an unqualified admission of a present subsisting debt which the party is liable to pay, and not merely that the debt was once due." *Dickinson* v. *McCamy*, 5 *Ga.* 486 (2). See also *Martin* v. *Broach*, 6 *Ga.* 30; *Bulloch* v. *Smith*, 15 *Ga.* 398; *Harrell* v. *Davis*, 108 *Ga.*

790 (2); *Roberts* v. *Leak*, 108 *Ga.* 806 (4), and cases cited; Civil Code, § 3789. There is nothing in this letter which would amount to an acknowledgment of a present subsisting liability. The letter as a whole would seem rather one of inquiry as to whether plaintiffs had the claim referred to, embodying therein an expression of a desire to settle it, if such claim was well founded. We see no acknowledgment of a present subsisting liability in the writing. Neither do we think that there is anything in the letter of March 28, 1898, which would make it a written acknowledgment of an existing liability. In addition to this, this letter has the appearance of an offer of compromise. The letter of April 4, 1898, is in no sense an acknowledgment of liability, but rather a repudiation of all present liability. See *Rudolph* v. *Sellers*, 106 *Ga.* 485; *Davidson* v. *Lawrence*, 49 *Ga.* 340. When the letters are taken singly, there is no such acknowledgment as will relieve the bar; and when the correspondence is taken as a whole, this view is strengthened. See, in this connection, *Sedgwick* v. *Gerding*, 55 *Ga.* 264. From the correspondence as a whole it comes out with more distinctness that there was really a controversy between the parties as to whether there was a liability on the part of the defendant. It was stoutly asserted by plaintiffs. It was not admitted, even if it was not denied, by defendant. There was a pending difference between them as to whether the defendant should pay the note in question. " There is a distinction between an offer or proposition to compromise a doubtful or disputed claim, and an offer to settle upon certain terms a claim that is unquestioned. An admission made in an offer of the latter character will be admissible when one made in an offer of the former character will not." *Teasley* v. *Bradley*, 110 *Ga.* 498 (6), and cases cited. This correspondence does not contain, under any view, an admission of an unquestioned claim. There is nowhere in it an unqualified, unconditional statement that the defendant owes the plaintiffs anything. The defendant rather shows a disposition to buy his peace from one who asserts a claim against him, the justice of such claim being at no time admitted, although not in terms denied. The correspondence contains expressions which look very much like the defendant was merely trying to compromise a claim against him about which he knew nothing. Even if anything in the correspondence can be properly construed as an acknowledgment of an existing liability,

the correspondence as a whole indicates such a difference between the parties as to justify a holding that whatever admissions were made by the defendant were made "with a view to a compromise." Under any view of the case, the petition set forth no cause of action, the plaintiffs under the law were not entitled to recover, and "the court committed error in directing a verdict for the plaintiffs under the pleadings in the case and the evidence submitted to the jury."

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent.*