BOX *v.* ATLANTIC AND BIRMINGHAM RAILROAD CO.

The plaintiff having failed to prove his case as laid, the trial court properly granted the defendant's motion to nonsuit.

Submitted July 14, — Decided August 12, 1904.

Action for damages. Before Judge Reynolds. City court of Waycross. September 15, 1903.

*J. T. Myers* and *S. W. & J. W. Hitch*, for plaintiff.

*J. L. Sweat*, for defendant.

EVANS, J. The plaintiff in error, J. C. Box, brought suit against the Atlantic and Birmingham Railroad Company, to recover damages for personal injuries alleged to have been sustained under the following circumstances: The plaintiff, who had taken passage on defendant's train at Waycross, made ready to alight when the train arrived at Upchurch, his destination, but by " reason of defendant's negligence said train was, by the agent of said defendant, caused to start forward before petitioner had time to alight from said train, and which he was attempting to do when he had reached the steps and was holding by his hands to the railing; he discovered the speed of the train was increasing and he determined not to get off, and just at this time some one behind him broke his hold of the railing, and, having no other support as he stood on the steps of the train, and by reason of the speed of the train and the motion and jerking thereof, petitioner was thrown from said train to the ground." The railroad company demurred both generally and specially to the plaintiff's petition. With a view to meeting the special grounds of demurrer, he offered an amendment which embraced the following allegations: "Said defendant's train was not stopped a reasonable length of time for plaintiff to alight and safely leave said train; . . at the time his hold on the railing was broken loose, the platform of the train, or the steps on which he was standing, was crowded with people; . . he does not know who was employed or who was a passenger, or their names, his back being towards them in his effort to alight from the train in the limited time. The train was stopped, and in the hurry and confusion of the passengers to get off, some one behind him, either a passenger or some one employed, the name or names of which he

does not know, in an effort to also alight from the train, following, and pressing on behind plaintiff, [broke] his hold on the railing, and, by reason of the jolting and running of the train, petitioner was thrown off of said train and injured." The trial judge allowed this amendment, and overruled the defendant's demurrer. At the conclusion of the plaintiff's evidence, counsel for the railroad company made a motion for a nonsuit, which motion the judge sustained, stating in his order of nonsuit that it was granted because (1) "sufficient facts are not alleged to authorize plaintiff to maintain said case," and (2) "under all the facts proven, plaintiff is not entitled to recover from defendant." To the judgment of nonsuit the plaintiff excepted, on the ground that the evidence introduced in his behalf was sufficient to authorize a verdict in his favor, and " the court having overruled the demurrer in said case as to the sufficiency of the allegations in the petition to authorize a recovery, and the evidence having sustained the allegations of said petition, it was error to grant a nonsuit."

As has heretofore been several times ruled by this court, a motion for a nonsuit does not present the question whether or not a cause of action is alleged in the plaintiff's pleadings, but only the question whether or not he has proved his case as laid. See *Kelly* v. *Strouse*, 116 *Ga.* 882, and cit. So the real point we are called on to determine in this case is whether the trial judge correctly held, as recited in the second ground of his order of nonsuit, that the facts proved by the plaintiff were insufficient to establish his alleged right to recover. After a careful review of the evidence relied on by him, we have reached the conclusion that he failed to prove his case as laid. The following is a summary of the evidence introduced, bearing upon the liability of the company: The plaintiff himself swore: When the train reached Upchurch, he arose from his seat in the rear car and started towards the rear platform, with the intention of getting off. When he got to the steps the train was running, and when he reached the bottom step a "fellow" whom he did not know said to him: "I will help you get off." This unknown person then took hold of plaintiff's hand and (as the latter expressed it) "threw [him] off while the train was running." The train was then running pretty fast. "There was motion of the train, pretty

considerable, at the time that fellow threw" plaintiff off.   After his hold was broken loose from the railing, he had nothing to hold on to, and "just had to fall."     There "was a number of other passengers on the train that day.   When the train stopped, Mr. Walker [a fellow-pasenger] started to get off there too.  .  . Somebody else wanted to get off there too.   Some of these people got off before" the plaintiff did.   "When the train stopped, [he] was out there on the platform, ready to get off.   The train just did barely stop.   It never did stop stark still.   It just did stop and went right on."     Plaintiff, after reaching the platform, tried to get off on the left side.     Other passengers were jumping off the train on the right side, so plaintiff tried to get off on the left side.   "Some others were standing there trying to get off; some passengers were standing on the left side" of the platform. Plaintiff went down to the bottom of the steps.   "No one was on that step but" him.     While he was standing on the platform, he did not see any of the passengers get off, and did not know whether any of them turned to go back to their seats.     He did not know "what kind of a looking man" was the person who caught hold of him and broke his hold, and could not say whether it was Mr. Walker, or whether or not other persons present had anything to do with breaking his hold.     In this connection, the plaintiff further testified :   "The man who pulled me off just come up and broke my hold and told me to get off. As well as I remember, he told me that he would help me get off. He said he could help me off.   I do not know when he got there. I do not know where he came from.     I was not going to get off then.   I was down on the bottom step, and the train was running, and he told me that he would help me get off.   I told him no, he could not.   I did not intend to jump off this running train, but this man broke my hold, and that throwed me off.   If this man had not broken my hold, I would not have fallen off."

The plaintiff also introduced as a witness Walker, who testified: "When the train rolled up to Upchurch,  .  . it came to a standstill, but it did not remain there; it just stopped and started.   About the time the train stopped, I got up to get off the train, and Box was coming on behind me, and he turned to the opposite side on which I was getting off.   The train was then moving some little bit, and he did not get off right at once, but

when he did it throwed him, and his cheek struck the corner of the cross-tie, and he laid up there until I could get to him and pick him up. . . When I got off I turned to look at the train, which was moving off. . . There was two others on the rear of the train, Mr. Smith and Mr. Stewart, and they were out on the platform while the train stopped.    They got off while the train was still moving, and about the time they got off it moved right off.    Before I could get off, the train was running and Box was still behind me," and he "attempted to get off on the opposite side of the train. . . I do not know anything about any one breaking Mr. Box's hold.    There was some one else on the side of the platform, but whether he had his hold broken by this person I do not know. . . Several people got off at Upchurch. There were four or five. .    Three people got off ahead of me." While I was getting off the train, "I was not looking back of me to see what Box was doing; but after I got on the ground I did. When I looked back, Box had turned to get off on the other side. As far as I know, Box may have started to get off on the same side I did, and then turned to get off on the other side.    The gentlemen who came out of the coach and stood on the platform, but did not get off, I think were Mr. J. C. Smith, Mr. Willis Thornton.    I do not think Thornton got off.    I do not know which one got off. . . I think Willis Thornton was on the platform."

It may be conceded that the foregoing evidence, which was all the plaintiff offered, established his contention that the defendant company was guilty of negligence in not stopping at the station a reasonable time in order to allow him and other passengers an opportunity to alight with safety.    But it is to be noted that the theory upon which the plaintiff framed the amendment to his petition was that the company's negligence in this regard was the proximate cause of the injury, for the reason that it caused hurry and confusion amongst the passengers who wished to get off, and that some unknown person, in his anxiety to alight while there was yet time, pressed on behind plaintiff, breaking his hold on the railing and causing him to be thrown off by the motion of the train.    In other words, the plaintiff's contention, as set forth in his pleadings, was, that the starting of the train after these passengers had reached the platform, but before they had an oppor-

tunity to alight, caused a mild panic, and that some one, acting under the excitement thus negligently brought about by the company, pressed upon the plaintiff, in an undue eagerness to alight, with such force as to cause him to lose his hold and be thrown from the moving train.    Does the evidence sustain this theory, granting that, if established, the company would be liable in damages?    We think not.    The plaintiff himself gave an altogether different account of the matter.    The theory of panic or stampede was not supported by the facts.    On the contrary, the evidence discloses that some person unknown to the plaintiff, with the avowed intention of assisting him to alight safely from the moving train, brought about his fall and injury.    There is nothing to indicate that this well-intentioned but misguided person had any connection with the defendant company.    His rash act was the proximate cause of the plaintiff's injury.    The plaintiff, while standing on the lower step and holding to the railing, was not in a situation of peril.    In fact, his complaint is that he was not permitted to remain in this position of safety.    He did not intend to jump from the train, and declined (though without avail) the assistance in alighting proffered him.    The person who interposed at this juncture was, apparently, a well-meaning fellow-passenger who acted on his own volition and not in behalf of the company.    As he was not set in motion by any negligent act of the defendant company or its servants, 'and as the plaintiff admitted during the course of his testimony that if "this man had not broken [his] hold, [he] would not have fallen off," we are unable to perceive how the defendant company can be held legally accountable for the plaintiff's injuries.

*Judgment affirmed.    All the Justices concur.*