80 660
a111 481

## FURR *et al. vs.* EDDLEMAN.

1. Where the pleadings are loose and defective, but no point is made on them below, this court will look at the substantial merits of the

case made by the evidence, and direct a new trial or not, as substantial justice seems to require.

2. Though an improper measure of damages be given in charge to the jury, if the verdict be for less than the damages, measured properly, would amount to, the finding need not be disturbed.

3. Under no possible view of the facts and circumstances, all of them considered, could the recovery be reduced consistently with right and justice were a new trial ordered.

May 14, 1888.

Pleadings. Practice in Supreme Court. New trial Damages. Charge of court. Verdict. Before Judge MADDOX. Paulding superior court. August term, 1887.

Eddleman sued W. O. and H. Furr for illegally and maliciously suing out and having levied on his cotton, corn, etc. a distress warrant, and joined Cooper, the sheriff of the county, with them as defendant; alleging that he, confederating with them, unlawfully and maliciously failed and refused to accept a lawful counter-affidavit and bond tendered in good time; refused to return the distress warrant, counter-affidavit and bond to the proper court, and went ahead without lawful authority and sold the crop, etc. levied on; and, together with the other defendants, appropriated the proceeds. Also that plaintiff had leased a farm from Mrs. Adaline Furr, executrix of Wilson Furr, deceased, for a term which would not expire until December 31st, 1886, but the two first named defendants, having, as above stated, got possession of plaintiff's goods, etc., maliciously and falsely swore out a warrant against him as a tenant in arrears for rent, on January 5th, 1885, and through the instrumentality of Cooper had him ejected from the farm.

Plaintiff amended his declaration, alleging that the two first named defendants were not really administrators of Wilson Furr, though pretending to act as such; that they destroyed the papers in the distress warrant matter, so that they could not be returned to court, etc. Plaintiff laid his damages at $850.

By amendment, L. Manning, who claimed an interest in the crop levied on, was made a party defendant.

Defendants, the Furrs, pleaded that they were administrators *de bonis non*, etc. of Wilson Furr, and acted in good faith in the discharge of what they thought their duty; that they acted for the purpose of collecting a debt due to the estate by plaintiff for rent; and that they apprehended the loss of the debt, if they had not acted as they did, and they still believe he intended to evade the payment of the debt. Also that plaintiff owed them, as administrators, $190 for rent; and they asked that this might be set off against his claims. They also pleaded a former adjudication, but this plea seems to have been abandoned.

On the trial, the following documentary evidence was introduced:

(1) The will of Wilson Furr, by which Charles Furr, testator's son, and Adaline Furr, his wife, were appointed executor and executrix.

(2) Grant to Mrs. Furr of letters testamentary, September 8th, 1881.

(3) Contract of lease, dated January 1st, 1884, to the farm in question, between Mrs. Furr and plaintiff, the rent being fixed at two thousand pounds of lint cotton per year, but time of payment not being specified. The lease is for a term of three years.

(4) Marriage license and return thereof, showing the marriage of Mrs. Furr to L. M. Ellis on February 3d, 1884.

(5) Affidavit for distress warrant against plaintiff, made by H. and W. O. Furr as administrators *de bonis non*, etc., for rent alleged to be due for the farm for 1884, alleging the rent due to be 2,000 pounds of lint cotton, demand for payment, refusal to pay, etc., and sworn to October 14th, 1884.

(6) The warrant issuing thereupon, levied on October 15th, 1884, on 5,580 pounds of seed cotton and three bales of lint cotton, with entry that the property was turned over by the constable levying the warrant to Cooper, as

sheriff, on October 25th, 1884; and entry by Cooper of sale of the property, except the cotton-seed, on January 3d, 1885, for $315.00, of which $199.00 is entered as paid to W. O. Furr, administrator, in addition to $21.80, costs for hauling and picking cotton, $62.63 paid to Manning as proceeds of cotton of his, sold as cotton of plaintiff, and the balance appropriated to costs and expenses.

· (7) Affidavit of H. & W. O. Furr, as administrators *de bonis non*, etc., to dispossess plaintiff as a tenant failing to pay rent, sworn to January 5th, 1885; warrant issuing thereupon January 5th, 1885 ; return of service of notice January 7th, 1885 ; and of execution of the warrant by dispossessing plaintiff, January 12th, 1885.

(8) Affidavit of plaintiff that the rent distrained for was not due, sworn to October 26th, 1884.

(9) Bond accompanying said affidavit, for eventual condemnation money, dated October 26th, 1884. In this bond W. T. Britton appears as security, and the bond is approved by the magistrate who issued the distress warrant.

The oral evidence was, in brief, this: Plaintiff swore that he rented the farm from Mrs. Furr, as executrix, for 1884, 1885 and 1886, the contract being only partly reduced to writing. When the rent was to be paid was left out of the writing, but witness was to have one bale and she one until the rent was paid. He got Britton to gin his cotton, the two defendants, Furr, refusing to do so, and had three bales at Britton's gin. He was not endeavoring in any way to evade payment of rent when his crop was levied on. Manning tended a portion of the farm as witness's tenant and was to have half the crop he made after settling for supplies, etc., his entire crop to belong to witness until they were paid for, but he did not pay witness for them though witness thought his interest would have paid witness if defendant had not interposed. A reasonable crop on the place for 1885 and 1886 with the force witness had would be worth over a thousand dollars. Witness had received nothing from the cotton taken off and had got

from 25 to 40 bushels of cotton seed; thinks Manning got some seed, but it was without authority from witness. Witness had no notice of any intention to apply for an order for the sale of the cotton as perishable property, and no notice of the sale. He had several conversations with Cooper about the replevy bond and the affidavit, and Cooper made no objection to the security, but objected all the while to the affidavit, and kept these papers from November 1st to Thursday night before the sale of the cotton on January 3d, 1885. He then gave them to witness and asked witness to go with him from his (Cooper's) house to town. About January 12th, Cooper entered witness's house, forcibly took his household goods and moved them a mile away. Witness would not have rented the farm for a year only at the price, as it was out of repair. He told the Furrs, before the levy, that he was ready to pay the rent just as he had agreed to do, and would divide the cotton as fast as he could get it out; and also told about his contract with Mrs. Furr, and that he would let them have one of the bales at Britton's gin. Cooper told him, when he finally handed witness the papers back at the time above stated, that he could not accept the bond. He watched the county papers, but saw no advertisement of the sale.

A witness corroborated plaintiff as to what was the rent contract, and two witnesses as to what he could have made on the farm for 1885 and 1886. One of these last said plaintiff could have made $200.00 a year clear; and the other said from $300.00 to $500.00 a year for 1885 and 1886.

Britton, the surety on the bond tendered by plaintiff, swore that he was amply solvent when the bond was signed and was still so· that plaintiff had three bales of cotton at his gin, of which plaintiff said witness was to have two for supplies and the other was to go for rent, and that witness saw the Furrs looking around the gin, and thinking they intended to levy, moved two of the bales without the

consent or knowledge of plaintiff, leaving one for the rent.

Bartlett, attorney for plaintiff, swore that at Cain's court ground on first Saturday in December, 1884, he pointed out to Cooper what affidavit the law required, and showed him that the affidavit and bond then in his possession was a complete compliance with the law, and then told him that if the bond was not sufficient, witness would give him any security required. Cooper said he would have to see his counsel, and if he could accept the affidavit and bond would let witness know, but witness heard nothing more from him. Witness watched the paper in which the sheriff advertised, but saw no notice as to the sale.

Cooper swore, for defendants, that when plaintiff came to him with the affidavit and bond, he told plaintiff that he would see if he could take it, and after consulting his attorney, told him that if he could give certain persons or either of them on the bond, witness would take it; that this was not the night before the sale; that he told several persons who came to him from plaintiff about the bond, that Britton did not live in the county and he did not know whether Britton was solvent or not; that he did not remember such a conversation as detailed by Bartlett, though he did remember Bartlett's telling him to name his man, but neither plaintiff nor Bartlett ever tendered any other surety than Britton; that the property was advertised for sale by posting notices at three or more public places in the county; that the sale was fair and made under an order of the court of ordinary; and that witness did tell plaintiff that he wanted to see counsel before he took the bond and affidavit.

W. O. Furr swore that he had been appointed administrator of the estate of Wilson Furr; that he went to plaintiff and demanded the rent, but could get no satisfaction out of him; that plaintiff told him that he (plaintiff) intended to befriend those who had befriended him; that plaintiff was hauling off the cotton; and that witness then sued out the distress warrant, acting in good faith and be-

lieving that if he did not take prompt steps he would fail.

Mrs. Ellis swore that she rented the farm as executrix to plaintiff for three years, beginning January, 1884; he was to pay 2,000 pounds lint cotton per year, he to have one bale and witness one, until the rent was paid.

One Lawrence swore that it was difficult to make anything above expenses on a two-horse farm, paying rent for the land.

One Hicks swore that plaintiff told him, after the levy of the distress warrant, that he intended to pasture the place the next year and would like to see the Furrs get cotton out of him then. Witness did not know what he meant. He didn't seem very angry.

The jury found for the plaintiff against H. and W. O. Furr, $425.00 and costs. Defendants moved for a new trial on the following grounds:

(1)–(3) Verdict contrary to evidence, law, etc.

(4) Because of error in the following charge: " The measure of damages to plaintiff, by reason of the loss of the unexpired term of the lease, would be the net profits of said unexpired term of two years of said lease."

The motion was overruled, and defendants excepted.

BLANCE & NOYES and ROBERTS & McGREGOR, for plaintiffs in error.

C. D. PHILLIPS and A. L. BARTLETT, *contra.*

BLECKLEY, Chief Justice.

It is difficult to determine from the declaration exactly what sort of an action this is. It resembles an action for suing out maliciously and without probable cause two writs, first, a distress warrant for rent, and then a process to remove the occupant of the premises as a tenant holding over. The declaration wants some of the proper averments to make this species of action; but it was probably amendable; and after verdict, there having no question

arisen in the court below as to the sufficiency of the pleadings, we are not disposed to scrutinize the declaration further than is necessary to classify it the best we can; and we base our opinion of the case upon the evidence, without much regard to the pleadings. In so doing, we but follow the example of both court and counsel who participated in the trial.

The evidence warrants a verdict based on the character of action which I have indicated; and treating it as that sort of action, the amount of the verdict is small, considering the circumstances (all of them) which appear in evidence. We need not scrutinize the charge of the court complained of. Perhaps it was not a correct charge, adapted to the facts of the case; but if not, it led to no unjust result as against the plaintiffs in error, the defendants below. The charge was, in substance, that the measure of damages for the loss of the unexpired term would be the net profits that the tenant might have made during so much of the term as he was deprived of by the abuse of process. We do not endorse this as a correct measure. But if the damages were measured properly, they would be more rather than less than the jury found; and so we uphold the judgment of the court denying a new trial, putting, as I have stated, our decision of the matter upon the evidence. If the case were sent back, the recovery could not rightfully be reduced in any view that we can possibly take of the evidence before us.

Judgment affirmed.