## ROBERTS *v.* KEELER.

1. Suing out a money rule against a levying officer is, in effect, the bringing of a suit or civil action against him.
2. A levying officer may show, as an excuse for not making the money on an execution placed in his hands, that the same has been paid.
3. Issuing a rule nisi against the officer is not an adjudication that there is probable cause for suing out the same, when the petition for the rule does not truly set forth the facts.
4. That the costs upon a fi. fa. have not been paid will not justify the institution of a rule against the officer for the principal and interest as well, when the plaintiff in execution has himself received payment of the principal and interest and therefore knows the officer is not liable therefor.
5. The evidence in this case fully warranted the jury in finding that the rules against the constable were sued out maliciously, without probable cause, and solely for the purpose of annoying the officer and putting him to trouble and expense.
6. A general complaint in a motion for a new trial that the verdict is "contrary to law" is not a special assignment of error; nor does such an assignment authorize the Supreme Court, at the instance of one against whom a verdict was rendered in the trial court, to pass upon the question whether or not the plaintiff's petition was good as against a general demurrer.
7. The question whether the bringing of a civil action maliciously and without probable cause affords ground for instituting against the plaintiff a suit for damages is not made in the present case, and, therefore, is not decided.

　　　　Argued April 27,—Decided July 10, 1900.

Action for malicious prosecution.　Before Judge Janes.　Haralson superior court.　July term, 1899.

*J. S. Roberts* and *Edwards & Ault*, for plaintiff in error.
*E. S. & G. D. Griffith* and *W. R. Hutcheson*, contra.

LUMPKIN, P. J.　The plaintiff below, Keeler, who was a constable, brought an action for damages against Roberts, alleging

in his petition that the defendant maliciously and without probable cause instituted against him, in a justice's court, five rules requiring him to show cause why he had not made the money on certain executions which had been placed in his hands for collection. There was no demurrer to the petition, but the case went to trial on its merits, and a verdict in favor of the plaintiff was returned. The case is here at the instance of the defendant, whose assignments of error have been disposed of by the rulings above announced.

1. One of the contentions of the plaintiff in error is: "That the rules nisi issued by the magistrate . . and which were the foundation of the proceedings were not suits instituted by the defendant, Roberts, but were rules by a court of law, calling on the executing officer to show cause why he should not be punished as for a contempt for a failure to perform his official duty." We are unable to conjecture why the institution of such a rule may not be regarded as a suit. In a broad and general sense, it is certainly an action by the movant of the rule against the respondent thereto. It is a proceeding in a court by one person against another, whereby the former seeks to obtain against the latter a judgment for money and the right to enforce the collection of the same by attachment. The defendant is, to all intents and purposes, placed in the position of being "sued." The mere fact that the magistrate issued the rule does not make it the court's case, rather than that of the movant, for he is as much responsible for the institution of the proceeding as is the plaintiff in an ordinary action for the filing of the petition by which it is begun. The difference is merely in the form of process prayed for in order to compel the defendant to appear in court and answer the plaintiff's complaint.

2. It appeared at the trial that one of the reasons set up by the constable for his failure to make the money on some of the executions was that the same had been paid, and that Roberts knew this to be so when he instituted the rules. In this connection, exception is taken to the refusal of the court to give in charge to the jury the following request presented in writing by counsel for the defendant: "If a fi. fa. regularly issued by a justice of the peace has been placed in the hands of a constable,

it is his duty to execute same by a levy on the defendant's prop-
erty, and he can not excuse himself for a failure to do so by
setting up a defense thereto in favor of such defendant." Clear-
ly, in view of the issue involved in the present case, this request
would have had a decided tendency to mislead the jury; and
moreover, it was not at all applicable. Surely it can not be
doubted that a levying officer may show, as an excuse for not
making the money on an execution placed in his hands, that
the same has been paid. *Wheeler* v. *Thomas*, 57 *Ga.* 161. If
the court had given the request above quoted, it would have
been, in effect, instructing the jury to the contrary.

3. Another contention of the plaintiff in error is, that the fact
that the magistrate granted rules nisi against the constable
amounted to an adjudication that Roberts had probable cause
for instituting the rules. In support of this contention the case
of *Short* v. *Spragins*, 104 *Ga.* 628, is cited. In that case it was
held that the sanctioning of an equitable petition and the grant-
ing of a restraining order by a judge of the superior court af-
forded conclusive evidence of probable cause for the bringing
of the action, if the petition "fairly and honestly set forth the
facts relied upon by the plaintiffs therein." But the principle
thus announced has no application to the present case, for the
reason that it affirmatively appeared at the trial that the alle-
gations in the petitions for the rules which Roberts presented
to the magistrate were not true.

4. Error is assigned upon the refusal of the court to charge
as follows: "If suit is pending or judgment has been obtained
and a settlement of the principal and interest by the defendant
has been made, and there is no agreement as to which party
shall pay costs, then, as between the plaintiff and the defend-
ant, the defendant would be liable to plaintiff for costs." This
request was evidently predicated upon evidence tending to show
that upon one of the executions placed in the hands of the con-
stable the costs, amounting to $4.35, were due and unpaid. It
appears, however, that in the petition for the rule against the
constable relating to this particular execution, Roberts claimed
that the officer was liable for $94.35, although, as matter of
fact, the principal and interest due upon the execution, amount-
ing to $90, had been paid to Roberts himself before the rule

was sued out.   The only theory, therefore, upon which the request just quoted would have been pertinent was, that even if Roberts did maliciously rule the constable for $94.35, knowing the officer was really liable for only $4.35, yet if the smaller amount was actually due upon the execution and the constable failed to levy, the conduct of Roberts in instituting this rule could not be made the basis of an action for malicious prosecution.   Clearly, such a theory is not tenable, and consequently the refusal of the request did not deprive the defendant of the benefit of a defense which he was entitled to set up.

5. Complaint is made in general terms that the verdict is "contrary to the evidence."   We certainly can not hold that this complaint is meritorious, for while there was some conflict in the testimony, that which was favorable to the plaintiff amply made out his case as laid, and fully warranted the jury in finding that the rules against him were sued out maliciously, that the defendant had no cause for instituting them, and that his sole purpose in so doing was to harass  and annoy the plaintiff and subject him to trouble and expense.

6. The motion for a new trial also alleges that the verdict is "contrary to law."   We have already attempted to show that suing out a money rule against an officer is, in effect, the bringing of a civil action against him.   In our consultation over this case the question arose, whether or not the institution of such an action, maliciously and without probable cause, afforded to the defendant therein ground for bringing against the plaintiff a suit for damages.   It was, in view of the ruling announced in *Mitchell* v. *Railroad Co.*, 75 *Ga.* 399, that "the bringing of a civil suit maliciously and without probable cause was not a ground upon which an action could be maintained, unless the action was one whereby the person of the defendant was arrested or his property attached, or some special damage was done to him," quite natural that this question should occur to us.   We can not, however, undertake to deal with it in the present case, for the imperative reason that it is not made, and we are therefore without jurisdiction to do so.   Even before the passage of the Supreme Court practice act of November 11, 1889 (Acts of 1889, p. 114), this court uniformly held that it had no authority to decide any question which was not passed upon by the

trial court and brought here for review by a plain and distinct assignment of error. A striking and pointed illustration is to be found in the case of *Jenkins* v. *State*, 50 *Ga.* 258, in which it was held: "Where there is a verdict of guilt in a criminal case, and a motion is made for a new trial on the sole ground that the verdict is contrary to law and to evidence, and the motion is overruled, this court will not inquire into the sufficiency of the indictment, no such question having been decided by the judge." The undoubted effect of this ruling was that a general assignment in a motion for a new trial that a verdict was "contrary to law" was the equivalent of no assignment at all, and the court accordingly allowed a verdict and sentence in a criminal case to stand, regardless of the question whether the indictment charged an offense or not. Again, in *Mayor* v. *Johnson*, 84 *Ga.* 279, a case which was tried in the superior court of Spalding county at the February term, 1889, this court held: "Points of law proper as grounds for demurrer ought not to be made first in this court under a ground for new trial that the verdict was contrary to law." And see comments of the present Chief Justice on page 283. In view of the constitutional provision that "the Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors" (Civil Code, § 5836), it is clear that we have no jurisdiction to pass upon any question not made in the court below. And, since the passage of the act above mentioned, the question of the authority of this court to deal with points not properly brought here for review is likewise jurisdictional, though the record may show that such points were in fact presented and passed upon by the trial court. Section 5584 of the Civil Code, which was taken from that act, in express terms declares that: "The Supreme Court shall not decide any question unless it is made by a special assignment of error in the bill of exceptions, and shall decide any question made by a specific assignment of error in the bill of exceptions." Of course, if a motion for a new trial contains a special assignment of error and the bill of exceptions alleges error in overruling the motion, the bill will be treated as itself making a special assignment of error. A general complaint that a verdict is "contrary to law" is certainly not "a special assignment of error."

It is anything but "special," in that it signally fails to point out a single respect in which the verdict is violative of law. There is statutory authority for moving for a new trial on the ground that the verdict is "contrary to evidence," or "decidedly and strongly against the weight of evidence" (Civil Code, §§ 5477, 5482), but no such authority for complaining in such a motion that the verdict is "contrary to law." Certainly, then, a ground of this nature ought to distinctly specify how or why the verdict is unlawful.

Even if the general assignment that a verdict is "contrary to law" could in any case be regarded as a proper ground of a motion for a new trial, it could not, as was held in 84 *Ga.*, supra, be so treated in a case where the petition failed to set forth a cause of action. If, then, the present petition is of that character, the defendant is not entitled to a new trial on any ground; for nothing is better settled than that a new trial will not be granted in a case where the petition is fatally defective in substance. In such a case, the remedy is by general demurrer before a trial on the merits, or by motion in arrest after verdict. The case of *Brock* v. *State*, 23 *Ga.* 371, has never been followed by this court, and the ruling therein on the question of practice is obviously unsound. It is not, however, necessary to formally overrule it, for unquestionably it has not, since the passage of the Supreme Court practice act of 1889, been binding as authority.

7. There is yet another reason why we ought not to decide whether the present petition does or does not set forth a cause of action, viz.: we have not, even in the brief of counsel for the plaintiff in error, been requested so to do. Were we, therefore, to reverse the judgment on the ground that the petition is fatally defective, we would be ruling upon a point not argued before us or insisted upon here, and as to which the defendant in error has had no opportunity to be heard. Accordingly, it is apparent that we have neither right nor pretext for usurping authority which the law has expressly forbidden us to exercise.

*Judgment affirmed.    All the Justices concurring.*