### 9847. SOUTHERN RAILWAY COMPANY *v.* STEPHENS.

1. Where there is no demurrer to a petition fatally defective in that it does not set forth a cause of action, and by motion for a new trial a verdict against the defendant is complained of as being contrary to law, the petition may still be attacked by timely bill of exceptions to a judgment overruling the motion for a new trial.

2. A passenger on a railway train has no legal right to leave the cars unnecessarily on personal business or pleasure at an intermediate station, where his train is detained for an unusual length of time because of a wreck elsewhere on the line; and where he does so at his own instance and makes inquiry of the conductor as to the length of time the train is expected to remain at the station, the conductor can not be presumed to know that it is the desire and intention of the inquirer to absent himself from the station-grounds, merely to gratify idle curiosity concerning a nearby mill; and consequently the answer of the conductor, under such circumstances, expressing his opinion as to the length of the delay, apparently made in good faith, could neither increase nor diminish the duty or liability of the carrier to the passenger.

3. The plaintiff had no legal right of recovery in this case, and the verdict in his favor must therefore be set aside as being contrary to law.

         DECIDED JANUARY 14, 1919.

    Action for damages; from city court of Floyd county—Judge Nunnally. May 13, 1918.

    *Hamilton & Hamilton, C. J. Carey, Maddox, McCamy & Shumate,* for plaintiff in error.

    *W. B. Mebane, McHenry & Porter,* contra.

    WADE, C. J. The following is a fair statement of the case as

made by the pleadings and the evidence: On July 19, 1917, the plaintiff boarded a train of defendant's railway at Pryor's Station, Rome, Georgia, for Birmingham, Alabama, and paid his fare to the conductor in charge of the train to Anniston, Alabama, taking a receipt therefor. The train stopped an unusual length of time at Jacksonville, Alabama, and, as it was very warm in the coach, the plaintiff left the train, with several other passengers, in order to ascertain from the conductor the cause of the delay, and was informed by him that there was "a wreck down the road," and that they would be there "an hour—till twelve o'clock." Relying upon this information the plaintiff and a fellow passenger sought a nearby restaurant, and after lunch, thinking they had ample time, as it was then only 20 minutes after eleven, they decided to inspect a mill, about a quarter of a mile distant. They staid at the mill only a few minutes, and returned to the depot 10 or 15 minutes before twelve o'clock, when they discovered to their surprise that the train had departed. They then decided to go to Anniston, (which was approximately only 12 miles away, by taxicab, and it cost them 50 cents each to make the trip in this manner, and the plaintiff reached Anniston in time to continue his journey to Birmingham by the same train he would have traveled on had he not been delayed at Jacksonville. The jury returned a verdict in favor of the plaintiff for $250. The defendant filed a motion for a new trial, and exception is taken to the judgment overruling the motion.

" 'Proving a case as laid' will prevent a nonsuit, and may possibly prevent a motion for a new trial from being granted on the ground that the verdict is contrary to evidence, but it will not authorize a recovery unless the case as laid so authorizes. *Mere proof of a fact will not in law authorize a recovery unless the existence of such fact so authorizes.* [Italics ours.] One of the prerequisites to a recovery by a plaintiff is that his pleadings and evidence be in substantial accord, but it is not the only prerequisite. A failure to demur does not confess the action either in law or in fact. A defendant who passes over, without demurring, a petition which is fatally defective in that it does not set forth a cause of action may still attack the same on this ground by an oral motion to dismiss the case at any time before verdict; after verdict, by motion in arrest of judgment made during the term

at which the judgment was rendered; or by assigning error on the judgment by a direct writ of error sued out in due time; or within three years from the date of the judgment, by motion to set aside. . . . On such a writ of error the whole case as shown by the record is before the court of error for inspection and revision. Where the defect appears on the face of the declaration, it is settled law that a court of error is bound to notice it. When it is clear that in point of law the action will not lie, a judgment in favor of the plaintiff will be reversed on writ of error." *Kelly v. Strouse,* 116 *Ga.* 872 (43 S. E. 280). Although in the present case there was no demurrer to the petition and no motion to dismiss the case before verdict, and no motion after verdict to arrest judgment, the writ of error excepting to the overruling of a motion for a new trial, in which motion it is complained that the verdict is contrary to law, is sufficient to raise for adjudication in this court the question whether or not the facts alleged by the plaintiff authorized a lawful recovery against the defendant. Notwithstanding the absence of any demurrer or motion to dismiss on account of the legal insufficiency of the allegations in the plaintiff's petition, and notwithstanding the proof submitted may as a whole establish without conflict every essential allegation made, if the facts alleged and proved in themselves fix no burden of liability upon the defendant, or do not charge the defendant with responsibility for the injuiries on account of which the plaintiff sought to recover damages, the total insufficiency of the facts alleged and proved can nevertheless be taken advantage of under general grounds of a motion for a new trial, and a bill of exceptions assigning error on the judgment overruling the motion for a new trial presents for determination the question as to the existence of any cause of action, based upon the allegations and proof as made.

In order to determine whether the petition set forth a cause of action against the defendant, it is necessary to ascertain whether the defendant owed any duty to the plaintiff, under the allegations set forth, which were substantially supported by proof; for, in the absence of such an obligation to the plaintiff, no negligence on the part of the defendant could exist of which plaintiff had a right to complain. The plaintiff was a passenger on the defendant's train, under a contract, to be carried to Anniston, but on arriving at the town of Jacksonville, where the train was delayed several minutes

on account of a wreck, he voluntarily left the train and its vicinity, and by so doing ceased to be a passenger until he again entered the train for the purpose of being conveyed to his destination, or at least came again upon the premises of the defendant for the purpose of boarding the train. To enable the plaintiff to hold the defendant responsible for his safe carriage to Anniston, he should at least have remained at the station, or in close proximity thereto, where he could have been looked after by the officers or agents of the company. Such is the rule announced in *King* v. *Central Ry. Co.,* 107 *Ga.* 754, 757 (33 S. E. 839). Where a passenger actually leaves the premises of the company, he ceases to be a passenger. 2 Am. & Eng. Enc. L. 745; *Brunswick & Western R. Co.* v. *Moore,* 101 *Ga.* 684 (28 S. E. 1000); *Ga. R. &c. Co.,* v. *Richmond,* 98 *Ga.* 495 (25 S. E. 565). Elliott, in his work on the Law of Railroads, vol. 4, § 1592, says that where a passenger leaves the train and voluntarily walks along the track, the relation of carrier and passenger is severed. The contract of a railroad company with a passenger is to carry him to his point of destination. He is not expected to leave the cars at intermediate stations, and the carrier does not engage to afford him an opportunity to do so except at the usual stopping-places for refreshments. It is not the rule that once a passenger always a passenger. DuBose *v.* Atlantic Coast Line R. Co., 81 S. C. 271 (62 S. E. 255); 10 C. J. 612. See also Palmer *v.* Williamette Valley Southern R. Co., 88 Or. 322 (171 Pac. 1169, L. R. A. 1918D, 1114).

It is therefore no longer an open question in Georgia, that where a passenger voluntarily leaves the station-grounds of the carrier his status as such terminates.

However, the plaintiff contends that this general rule is inapplicable to the instant case, in view of the statement of the conductor, —"We will be here an hour—till 12 o'clock." This contention is unsound. It will be observed that the conductor made no misstatement as to the facts of the existing situation, and there is nothing that tends to show that when he expressed his opinion that the train would remain at the station until 12 o'clock, he knew it would depart before that time, or that he made any wilful misrepresentation to the passenger with intent to deceive. The train was held at the station on account of a wreck further along the line, and was directed to remain there until the way was cleared,

which it was estimated or conjectured would take until 12 o'clock. Being apprised of the facts causing the delay, the plaintiff must have known, as an ordinarily intelligent man, that the future operation of the train upon which he was a passenger, and especially the time of its departure from that station, would altogether depend upon the time when the obstruction was removed from the track. Notwithstanding such knowledge, he nevertheless, without any legally sufficient reason and without the consent or knowledge of the conductor, absented himself from the vicinity of the station at which the train was delayed, in order to go a quarter of a mile distant merely to satisfy his curiosity as to the situation in and about a certain mill. Under these circumstances he had no legal right to rely blindly upon the purely gratuitous and casual statement of the conductor that the train would not leave until 12 o'clock; and it seems to us only reasonable that by leaving the station grounds altogether he assumed the obvious risks incident to a subsequent change in the situation which might permit the train to leave earlier than was conjectured at the time the conductor made the statement as to its prospective time of departure. If this were not true, then the plaintiff's action in leaving the station would have made the departure of the train not only dependent upon the removal of the wreck, but upon the time he might elect to return—before 12 o'clock. In other words, to agree with the plaintiff's contention, we would have to hold that the true statement of the conductor as to the cause and possible duration of the delay (made merely from courtesy and not in the discharge of any legal duty) so changed the rights of the parties as to make any movement of the train up to the hour of 12 o'clock wholly dependent on the passenger's pleasure. It could not be required or expected that a conductor in charge of a train en route between terminal points should call the roll of his passengers at every intermediate station where the train might stop for a longer or shorter interval, before permitting it to proceed on its way, lest by some chance he might have unguardedly, though in perfect good faith, expressed his personal opinion to some one or more, of his passengers as to the probable length of stay the train would make at that station, or as to the time of its departure therefrom. A different question might *possibly* be presented if the passenger had acquainted the conductor with his intention to absent himself from

the station or the adjacent grounds, and had been thereupon assured by the conductor that he could do so with safety, provided he boarded the train by or before a time named, anterior to which time the train would not take its departure, and the passenger returned to the station before the time mentioned and found the train had already gone.

The ruling we make is not without precedent. In the case of Missouri Pac. R. Co. *v.* Foreman, 73 Tex. 311 (11 S. W. 326, 15 Am. St. R. 785), where upon nearing an intermediate station a passenger asked the conductor how long the train would stop at that station, and he answered, "five minutes," and on the arrival of the train at the station the passenger left the cars to inquire after some business matters, and had gone but a few steps when he heard the train start, and in attempting to get on it while in motion he was thrown down and injured, and it appeared that the train started in much less time than five minutes, it was held that the answer of the conductor that the train would wait five minutes created no obligation to hold the train that length of time.

It follows from what has already been said that when a conductor is merely asked how long a train will stop at a certain intermediate station, he is not presumed to know that it is the desire of the inquirer to leave the vicinity of the station and consume in pleasure or business the time of the halt. Such questions are frequently asked by passengers from idle curiosity or other motives, and it would be unreasonable to hold that by answering them the conductor assumes for the company the obligation to watch at all times the movements of the passengers, or unnecessarily to delay the train or to make its movements coincide with answers made in good faith to such apparently idle questions. We think the obligation of the defendant to the passenger was neither increased nor diminished by the conductor's answer in this case; and therefore the verdict for $250 in favor of the plaintiff (who suffered in actual damages only the small amount of 50 cents) must be set aside as being contrary to law.

In view of the foregoing ruling it is unnecessary to pass upon the several special grounds of the motion for a new trial.

*Judgment reversed. Jenkins, J., concurs. Luke, J., concurs dubitante.*