## DAVIS *v.* METROPOLITAN LIFE INSURANCE COMPANY.

1. "It was within the power of the insurance company, as between itself and its agent, to define and limit the powers of the latter. Limitations upon the power of the agent affect all third persons dealing with him, who have knowledge or notice thereof; and any notice of limitations upon the agent's power, which a prudent man is bound to regard, is the equivalent of knowledge to the insured." *Reliance Life Insurance Co.* v. *Hightower,* 148 *Ga.* 843, 845 (98 S. E. 469), and cit.; *New York Life Insurance Co.* v. *Patten,* 151 *Ga.* 185 (106 S. E. 183), and cit. *Hutson* v. *Prudential Insurance Co.,* 122 *Ga.* 847 (50 S. E. 1000); *Rome Industrial Insurance Co.* v. *Eidson,* 138 *Ga.* 592 (75 S. E. 657).

2. The stipulation in the signed application limiting the powers of agents, medical examiners, and other persons, coupled with other words in the policy, were sufficient to charge the applicant with notice that she was dealing with a special agent with limited powers. Other statements in the application show knowledge of the terms of the insurance contract.

3. The verdict was supported by evidence. The court did not err in refusing a new trial.

4. We do not decide whether equity has jurisdiction to cancel an insurance policy after loss, because that question is not made in the case.

No. 4856. JANUARY 15, 1926.

---

Appeal and Error 3 C. J. p. 689, n. 41; 4 C. J. p. 669, n. 71.

Insurance 32 C. J. pp. 1062, n. 85; 1064, n. 7; 1065, n. 8, 13 New; 1268, n. 39; 1269, n. 65.

Equitable petition. Before Judge Wright. Floyd superior court. April 2, 1925

On June 24, 1922, the Metropolitan Life Insurance Company executed and delivered a policy of insurance in the sum of $1000, upon the life of Mrs. Marie Quarles. Mrs. Florence Davis, the mother of the insured, was named in the policy as beneficiary. The insured died on February 15, 1923. On March 17, 1923, the Insurance Company filed a petition against Mrs. Davis, praying that she be required to surrender said policy, and that a decree be made by the court cancelling the same and holding that there was no liability on the part of petitioner to defendant on account of said policy. The right to this relief is based upon the allegation in the petition that the issuance of the policy was procured through fraud on the part of the insured. There is attached to the petition a copy of the policy of insurance and of the application made by the insured for the issuance of the same. In part A of the application the following appears: "It is understood and agreed: 1. That the foregoing statements and answers are correct and wholly true, and, together with the answers to the questions on Part B hereof, they shall form the basis of the contract of insurance, if one be issued. 2. That no agent, medical examiner, or any other person except the officers at the home office of the company, has power on behalf of the company: (a) to make, modify, or discharge any contract of insurance, (b) to bind the company by making any promises respecting any benefits under any policy issued hereunder. 3. That any statement made to or by, or any knowledge on the part of, any agent, medical examiner, or any other person, as to any facts pertaining to the applicant, shall not be considered as having been made to or brought to the knowledge of the company, unless stated in either part A or B of this application." This is followed by the signature of the applicant. In Part B of the application the following appears: "I hereby certify that I have read the answers to the questions in part A hereof, and to the questions in Part B hereof, before signing, and that they have been correctly written as given by me, and that they are full, true, and complete, and that there are no exceptions to any such answers other than as stated herein." This is likewise followed by the signature of the applicant. The copy of the policy attached to the petition recites that it is issued "In consideration

of the application for this policy, copy of which is attached hereto and made a part hereof, and of .the payment of the ½ annual premium of twenty-two dollars and eighty-five cents, and of the payment of a like amount upon each 24th day of June and December hereafter, until twenty full years' premiums shall have been paid, or until the prior death of the insured." It also contains the following: "The provisions and benefits printed or written by the company on the following pages are a part of this contract as fully as if recited over the signatures hereto affixed."

The petition alleges that under the head of provisions and benefits under said policy there appeared the following: "3. Incontestability:—This policy (and the application therefor) constitutes the entire contract between the parties, and, except for nonpayment of premiums, shall be incontestable after two years from the date of its issue. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy or be used in defense of a claim hereunder, unless it is contained in the written application therefor and a copy of such application is securely attached to this policy when issued." The petition alleges that in part B of said application, which consists of statements made by the insured to the medical examiner, questions were propounded to the insured and answers given, as follows: "3. Have you during the past year resided or been intimately associated with any person suffering from tuberculosis? If so, give particulars and precautions taken." "No. Husband died cancer · throat, four months duration, 1921." "10 B. Have you ever suffered from any ailment or disease of the heart or lungs?" "No." "10 C. Have you ever suffered from any ailment or disease of the stomach or intestines, liver, kidneys, or genito-urinary organs?" "No." "11 G. Have you consulted a physician for any ailment or diseases not included in your above answers?" "No." "12. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years, and for what illness or ailment? If none, so state." "Dr. DeLay, 1913, pneumonia. Complete recovery." The petition alleges that petitioner relied upon the statements thus represented and warranted by Marie Quarles; that she knew them to be false and fraudulent; that within the year preceding the date of said application Marie Quarles

has resided and been intimately associated with her husband, who was suffering from and finally died of tuberculosis in December, 1921; that at the time the application was made Marie Quarles was suffering from tuberculosis and from various ailments and diseases of the genito-urinary organs; that on or about February 15, 1922, she had consulted Dr. W. P. Harbin for tuberculosis and various diseases of the genito-urinary organs, but no information concerning the same was included in her answers above stated; that in 1918, less than five years prior to the application she had an attack of la grippe and was attended by a physician, and in February, 1922, and May, 1922, consulted Dr. Harbin for tuberculosis and various female troubles; that, upon discovery of the fact that the insured was suffering from tuberculosis, petitioner tendered to her the amount of the premiums paid, and demanded a return of the policy, which was refused; that since discovering that the statements in said application were false and fraudulent it has not received any premiums or in any other way recognized the validity of said policy; that on December 12, 1922, it advised the insured that said policy had been cancelled on its books, and that unless the policy was surrendered within twenty days it would institute suit for cancellation of the same; that the death of insured was due to pulmonary tuberculosis; and that the suit against the beneficiary named in the policy is instituted merely for the purpose of carrying out the purpose entertained by petitioner, prior to the death of the insured, of procuring surrender and cancellation of the policy. The prayers are, for process; that the defendant be required to surrender the policy; that the same be cancelled by decree, and for general relief.

Trial of the case resulted in a verdict for the plaintiff. The motion of the defendant for a new trial, as amended, was overruled, and error is assigned upon that judgment. The motion for new trial complains that the court refused to permit the defendant to testify, in accordance with averments contained in her answer, that she was present at the time the examination of the insured was made by the medical examiner of the insurance company, and heard the conversation between the insured and the medical examiner, and that the following was what took place: In reply to said question, "Marie Quarles told the medical examiner of plaintiff that she had married her husband eight months before

he died, and that she had lived with him up to about four weeks before he died. That . . one physician in the State of South Carolina had told her husband that he had tuberculosis, but that she herself did not know whether he had it or not, nor whether he had died with it or not." That thereupon the medical examiner answered the question asked in the application and wrote the word "yes." That Marie Quarles at the same time, in answer to the question in such application, told the medical examiner "that she understood her husband had died with cancer of the throat, with which he had suffered four months prior to his death. That in answer to the question, "Have you ever suffered from any ailment or disease of the heart or lungs?" Marie Quarles replied she had not; that thereupon the witness, Mrs. Florence Davis, stated to plaintiff's medical examiner that her daughter, Marie Quarles, had lifted the infant child of Mrs. E. A. Carlson, and that she had strained her back and had complained of her back hurting her, and that Marie Quarles had gone to Dr. W. P. Harbin, and consulted him, and that Dr. Harbin had made an examination of her, and that Dr. Harbin had informed her that there was nothing serious the matter with her, and the only thing that, in his opinion, her complaint could have come and did come from, was that she was kind of run down, and that thereupon the said Dr. Harbin did not treat her, or prescribe for her, but put her on a diet and had her to eat milk and eggs. That in answer to the question, "Have you ever suffered from any ailment or disease of the stomach, intestines, liver, kidneys, or genito-urinary organs" Marie Quarles told said medical examiner that she had not that she knew of. That in answer to the question whether or not she had consulted a physician for any ailment or disease of any kind not included in the above answers of her application, Marie Quarles not only stated that she had consulted Dr. DeLay and that Dr. DeLay had treated her for pneumonia in 1915, but in addition told the medical examiner of plaintiff that she had consulted Dr. Harbin in the spring of 1922, having sprained her back, and about having female trouble, which she had been troubled slightly with. That in answer to the question propounded by said medical examiner Marie Quarles stated that she had consulted Dr. W. P. Harbin in the spring of 1922, and that if there was anything the matter with her at the time the medical examiner was making

such application, in the way of tuberculosis or disease of the genito-urinary organs, she did not know of it. The motion for new trial states that the object of offering said testimony was to prove that the insurance company knew of said facts before the application for insurance was signed by Marie Quarles, before the policy was issued and delivered, and before the first premium had been paid, in that knowledge to the plaintiff's agent and medical examiner was knowledge to the plaintiff; that plaintiff, having issued and delivered said policy of insurance under such circumstances, is estopped from setting up the grounds contended for in its petition and asking that the policy be cancelled; that, knowing the facts which the defendant offered to prove by the witness, the plaintiff had waived each and all of the grounds upon which it asserted a right to have the policy cancelled.

*Porter & Mebane,* for plaintiff in error.

*Maddox, Matthews & Owens,* contra.

GILBERT, J. 1, 2, 3. The first, second, and third headnotes do not require elaboration.

4. In considering such a case the question might arise as to whether a court of equity has jurisdiction of a suit seeking to cancel a life-insurance policy on the ground that it was obtained by fraud. The case was tried without written demurrer or other motion to test the sufficiency of the petition. Our Code (1910), § 4538, provides: "Equity will not take cognizance of a plain legal right, where an adequate and complete remedy is provided by law." We do not decide this question, because it is not made in the case. We will, however, make reference to the following cases, where the subject is elaborately discussed and many authorities cited, and wherein it is said that "the overwhelming weight of authority sustains the rule . . that a court of equity will not, after the loss insured against has occurred, cancel a policy of insurance and enjoin proceedings at law thereon, merely upon the ground that the policy was procured through the fraud of the insured, since such a defense is fully available at law." Woelfle *v.* The Sailors,. 12 L. R. A. (N. S.) 881; Pacific Mutual Life Insurance Co. *v.* Glaser, 45 L. R. A. (N. S.) 222 (3) ; Banker's Reserve Life Co. *v.* Omberson, 48 L. R. A. (N. S.) 265. Elaborate annotations will be found in connection with each of these cases.

After verdict and judgment in this case the losing party filed

a motion for a new trial, which was overruled, and the writ of error is to that judgment. It is well settled that there are a number of proceedings that the losing party might have sued out in order to test the question of the sufficiency of the petition to set out a cause of action, even after verdict and judgment. *Kelly* v. *Strouse*, 116 *Ga.* 872, 888 (43 S. E. 280). However, in the present case the plaintiff in error did not elect to pursue any of the available remedies. In the *Kelly* case, just cited, Mr. Justice Cobb said: "In *Savannah, Florida & Western Ry. Co.* v. *Ladson,* 114 *Ga.* 762, *Third National Bank* v. *Ry. Co.,* 114 *Ga.* 890, and *Pittsburgh Co.* v. *Smith,* 115 *Ga.* 764, this court affirmed judgments in favor of plaintiffs, and refused to consider the question as to whether, under the facts alleged in the different petitions, the plaintiffs were under the law entitled to recover. An examination of these cases will show that they were before this court on exceptions to the overruling of motions for new trials, and everything said in any of them must be read in the light of this controlling fact. In no work on pleading that we have examined have we been able to find enumerated or referred to as a ground for a new trial that the plaintiff's declaration, count, or petition, as the case may be, is fatally defective. See 4 Chitty's Gen. Pr. 29 et seq.; 2 Tidd's Pr. (3d Am. ed.) *906 et seq.; 3 Estee's Pl. § 4847 et seq.; Ship. Com. Law Pl. 113-116; Andrews' Steph. Pl. (2d ed.) 228; 4 Minor's Inst. pt. 1, mar. p. 756. It never has been at any place where the common law prevails, so far as we are now advised, the office of a motion for a new trial to call in question the legal sufficiency of the pleadings of the plaintiff."

*Judgment affirmed. All the Justices concur, except Russell, C. J., dissenting.*