GRICE *v.* GRICE.

No. 14812.   MAY 8, 1944.

*J. L. Smith* and *Willis Smith,* for plaintiff in error.

*J. Lon Duckworth* and *Boykin & Boykin,* contra.

BELL, Chief Justice. ■ Counsel for the plaintiff in error, the defendant in the trial court, have cited several decisions to the effect that an absolute deed of conveyance will not be canceled at the instance of the grantor merely because of breach of a promise made by the grantee, in consideration of which the deed was executed, since the remedy in such a case is an action for damages. They say also in effect that there was no evidence of actual fraud, and that for this reason, among others, the verdict was unauthorized. As we view the case, it is not open to a consideration of these questions. Whether actual fraud would be an essential element of the plaintiff's case under the law, the petition did not allege such; nor did the defendant in the trial court, by demurrer or otherwise, invoke any ruling as to whether the petition or any one of its three counts was sufficient to state a cause of action. The jury found for the plaintiff on all counts, and the case is before this court solely upon exceptions to the overruling of the defendant's motion for a new trial as amended, in which the nearest approach to an attack on the petition was a complaint that the verdict was "contrary to law." Under such a complaint, no question is presented as to whether the plaintiff's allegations were sufficient to state a cause of action for any of the relief prayed, and no such question should be determined. As was said by Bleckley, Chief Justice, in *Furr* v. *Eddleman,* 80 *Ga.* 660, 666 (7 S. E. 167): "After verdict, there having no question arisen in the court below

as to the sufficiency of the pleadings, we are not disposed to scrutinize the declaration further than is necessary to classify it the best we can; and we base our opinion of the case upon the evidence, without much regard to the pleadings. In so doing, we but follow the example of both court and counsel who participated in the trial." In numerous cases, it has been held, in effect, that after a verdict for the plaintiff a complaint in a motion for new trial that the verdict "is contrary to law" does not authorize this court to pass upon the question whether the plaintiff's petition was good against a general demurrer. *Mayor, etc. of Griffin* v. *Johnson,* 84 *Ga.* 279 (6) (10 S. E. 719); *Roberts* v. *Keeler,* 111 *Ga.* 181 (6) (36 S. E. 617); *Henley* v. *Brockman,* 124 *Ga.* 1059 (2) (53 S. E. 672); *Harbin* v. *Hunt,* 151 *Ga.* 60 (3) (105 S. E. 842); *Nixon* v. *Nixon,* 194 *Ga.* 301 (21 S. E. 2d, 702); *Kelly* v. *Strouse,* 116 *Ga.* 872 (6) (43 S. E. 280); *Davis* v. *Metropolitan Life Insurance Co.,* 161 *Ga.* 568 (4) (131 S. E. 490); *Boswell* v. *Federal Land Bank,* 181 *Ga.* 258, 259 (4) (182 S. E. 1).

A contrary ruling appears to have been made in *Goff* v. *National Bank of Tifton,* 170 *Ga.* 691 (3) (153 S. E. 767), but to the extent of such conflict, the latter decision must yield to the earlier unanimous decisions in the five cases first-above cited, beginning with *Furr* v. *Eddleman,* supra. See also, as being in conflict, *Southern Railway Co.* v. *Stephens,* 23 *Ga. App.* 200 (98 S. E. 176), criticised in *Gunn* v. *Johnson,* 29 *Ga. App.* 610 (116 S. E. 921), but cited approvingly in *Interstate Life & Accident Co.* v. *Houseworth,* 69 *Ga. App.* 337 (25 S. E. 2d, 233).

What is here said accords with the rulings in *Blount* v. *Metropolitan Life Insurance Co.,* 192 *Ga.* 325 (15 S. E. 2d, 413), where the direction of a verdict for the *defendants* was affirmed on a direct bill of exceptions by the plaintiff, and in *Moody* v. *Moody,* 195 *Ga.* 13 (22 S. E. 2d, 836), where it was held that the finding for the *defendant* was demanded as a matter of law, and therefore it was error to grant a new trial. Compare *Twilley* v. *Twilley,* 195 *Ga.* 291 (24 S. E. 2d, 41).

■ It appears from the entire record that the plaintiff's right to a verdict on count 1 would depend upon whether she proved the allegations of one or both of the other counts. Therefore we shall defer any ruling as to the evidence under the first count until after we have considered it as applied to the other two counts.

The second count alleged that the deed of January 2, 1933, purporting to convey the entire estate in described land, was without consideration and never delivered. The evidence showed that if this deed *was* delivered, it was based at least upon an agreement of the defendant that he would obtain a loan thereon for the benefit of the plaintiff, which, without more, would prevent it from being entirely without consideration. Code, § 20-302. The allegation was not that the consideration had failed, but that none had existed.

This brings us to the question whether there was any evidence to authorize a finding that the deed was never delivered. It appears to have been duly attested by two witnesses, one of whom was an official so authorized by law, and the attesting clause recited delivery. This was sufficient to raise a prima facie presumption that the deed was delivered. *Ross* v. *Campbell*, 73 *Ga.* 309 (1 *a*) ; *Bourquin* v. *Bourquin*, 110 *Ga.* 440 (4), 446 (35 S. E. 710). When the deed was introduced in evidence, it showed that it had been recorded, and this also raised a prima facie presumption of delivery. *Mays* v. *Fletcher*, 137 *Ga.* 27 (2) (72 S. E. 408). Furthermore, it was found in the possession of the grantee, and in like manner this raised a presumption of delivery. Code, § 29-105. All three of these presumptions, however, were rebuttable, and it still could be shown that, as a matter of fact, the deed was never delivered to the grantee by authority of the grantor, and proof of such nondelivery could be made by circumstantial as well as direct evidence. *Allen* v. *Bemis*, 193 *Ga.* 556 (2) (19 S. E. 2d, 516) ; *Stinson* v. *Daniel*, 193 *Ga.* 844 (2) (20 S. E. 2d, 257). It has also been held that mere manual delivery to the grantee is insufficient, unless an intention to surrender dominion is also present. *Willingham* v. *Smith*, 151 *Ga.* 102 (106 S. E. 117) ; *Cooper* v. *Littleton*, 197 *Ga.* 381 (29 S. E. 2d, 606). The plaintiff testified that the reason she made this deed was that she wanted to get a loan, but that the deed was not delivered to the defendant in her presence; that Judge James Beall, who it appears witnessed the deed as a notary public, kept it; that Harvey Beall, since deceased, was present; and that she went "back up there in July," and Harvey Beall drew another deed, which she signed. It could have been inferred that the loan was actually obtained on the second deed, for that deed was executed and recorded on July 1, 1933, and the loan was made in the fol-

lowing August, while the deed of January 2, 1933, being the one here under consideration, was not recorded until nearly three years later.. The very fact that the second deed was made for such purpose could have been taken by the jury as a strong circumstance indicating that the first deed was never delivered. Whether or not these facts without more would be sufficient to establish nondelivery, in view of the presumptions above mentioned, the defendant,. who was called by the plaintiff for cross-examination, testified to circumstances which, when,added to the other evidence, were in our opinion sufficient to authorize a finding that the deed was never delivered. The plaintiff desired a loan, and signed the deed as a step in the direction of having the defendant obtain a loan for her benefit on the basis of this deed, as showing title in him to the security. He did not testify that the deed was delivered to him by the plaintiff, but stated that Harvey Beall, attorney for the land bank, delivered it to him.

The deed as introduced in evidence showed that certain mathematical calculations had been written upon its face before it was. recorded, and as to this matter the defendant testified that Harvey Beall said, "I have some figures on there and I will just write another by this." Thus it seems that the deed had been treated by Harvey Beall as being without force, and that for this reason, and' in view of the "figures on" it, he wrote another deed. While the defendant testified that, "Harvey Beall wrote the deed in his office,. she signed it and she passed it back to Harvey and he gave it to me," he did not state *when* Beall "gave" it to him, and this was evidently not done until some time later, that is, until Harvey Beall had defaced it by writing the figures upon it; for it was at the time they were "fixing to close" the loan several months later that Beall, after asking him if he had a deed, and receiving an affirmative reply, made the statement, "I have some figures on there,. and I will just write another by this." It could also have been found that the calculations related to the quantity of land to be conveyed, and that they were made because of a discovery of errors in the description, and for the purpose of having a correct description, in the event a later deed should be executed. It appears that in the original deed a part of the land was first described as being in lot 60, whereas in the second deed no lot by that number was. mentioned. The deed also contained an incomplete sentence, to

wit: "It is agreed ———". This it seems would also tend to show that the deed was never delivered, especially in view of the fact that the second deed contained a clause at the same point and beginning with the identical language, the full sentence in the last deed being: "It is agreed and understood that Mrs. Emma Lou Grice is to have a life-estate in the above property as long as she may live." Again, there was some evidence that the second deed, which purported to reserve a life-estate in the grantor, may have been required by the lender in order that the grantor and the grantee would both sign the security instrument and the note, and both thus become obligated for the debt. The defendant's testimony was not so certain, clear, and consistent that the jury were bound to accept it as true, but on the contrary it was of such nature that they were authorized to draw inferences therefrom unfavorable to him. *Lewis* v. *Patterson*, 191 *Ga.* 348 (4) (12 S. E. 2d, 593).

We are of the opinion that the direct and circumstantial evidence, as above discussed, was sufficient to show that the first deed, after being signed by the plaintiff, was left either with Judge James Beall or with Harvey Beall, for delivery to the defendant only in the event a loan from the Federal Land Bank should be obtained thereon; that the deed was later found by Harvey Beall to be imperfect, and for this or some other reason the event of obtaining the loan did not at any time happen as applied to that deed; that such deed came into the possession of the defendant in some authorized manner; and that, if there was not a technical escrow, the grantor still did not surrender control of the deed, so as to perfect delivery. We are thus obliged to conclude that the evidence authorized a finding in favor of the plaintiff on the second count, that is, for a cancellation of the deed of January 2, 1933, as prayed in that count.

■ The third count was based upon the theory that the defendant and Harvey Beall falsely represented to the plaintiff that the land bank would not make a loan to a woman in the health that the petitioner "was then in," and on their promise that when the loan was obtained the defendant would reconvey said property to the petitioner, and upon the additional theory that the deed was void for the reason that no consideration was paid for the same. We are speaking now only of the original petition, and not of the amendments. We will refer to the amendments in division 4, infra.

What has been said in the preceding division as to want of consideration for the first deed will apply with even greater force as to the second deed, since the loan was actually obtained thereon according to the plaintiff's intention. Clearly, this deed was not wanting in consideration.

It appears from the petition that the plaintiff is not relying upon the claimed promise to reconvey as a *contractual obligation,* for she did not pray either for specific performance or for general relief. However, as to enforceability of such a promise as a contract, see *Shapiro* v. *Steinberg,* 175 *Ga.* 869 (166 S. E. 767); *Shapiro* v. *Steinberg,* 179 *Ga.* 18 (175 S. E. 1); *Stonecypher* v. *Georgia Power Co.,* 183 *Ga.* 498 (189 S. E. 13); *Guffin* v. *Kelly,* 191 *Ga.* 880, 887 (14 S. E. 2d, 50); *Cottle* v. *Tomlinson,* 192 *Ga.* 704 (4), 712 (16 S. E. 2d, 555); *Ramsey-Fender Motor Co.* v. *Chapman,* 46 *Ga. App.* 385, 390 (168 S. E. 92). She alleged that the deed was void and prayed only that it be so declared and ordered surrendered and cancelled, and for process. Therefore, it seems that, aside from her allegation as to want of consideration, she relied upon the alleged false representation and the oral promise to reconvey, merely as a combined cause for cancellation. Compare *Holton* v. *State,* 109 *Ga.* 127 (34 S. E. 358); *Caslleberry* v. *Wells,* 183 *Ga.* 328 (2), 335 (188 S. E. 349). Under the theory thus presented, proof of the promise without more would not support her allegations or authorize a cancellation. We have carefully examined the evidence for the purpose of determining whether the defendant and Harvey Beall, or either of them, *falsely* represented that the bank would not make the loan "to a woman in the health your petitioner was then in," and we find no evidence whatever to show such falsity. Thus, even though the evidence may have been sufficient to show that such a representation was made, and that the defendant was a party to it, yet since there was no evidence that the representation was false, as alleged, the verdict for the plaintiff as to count 3 was unauthorized.

■ There was an amendment to each count of the petition alleging that the property had been set apart to the plaintiff as a year's support from the estate of her deceased husband, and that the deed to the defendant was not made for the purpose of obtaining support, nor for obtaining funds to be used for this purpose; but we shall deal first with the amendment as to count 3. In the

absence of proof to the contrary, it will be presumed that the deed was made for a proper and lawful purpose. *Ragan* v. *Shiver,* 130 Ga. 474 (61 S. E. 1); *Jones* v. *Federal Land Bank of Columbia,* 189 Ga. 419 (2) (6 S. E. 2d, 52). However, as to this matter, the plaintiff's own testimony refuted her allegations. She testified that her husband died in 1928, leaving sufficient insurance to pay all of his debts; that this property was set apart to her as a year's support; that she later incurred debts in operating the property as a farm; and that the purpose of the deed was to enable her to obtain funds with which to retire these obligations. The evidence thus showed that the deed was made for the purpose of support within the meaning of the law upon that subject, and that in this respect the deed was valid. *Morris* v. *Hasty,* 171 Ga. 648 (156 S. E. 602); *Reynolds* v. *Baxter,* 177 Ga. 849 (171 S. E. 706); *Whitfield* v. *Maddox,* 189 Ga. 870 (2) (8 S. E. 2d, 57); *Harmon* v. *Gaddy,* 193 Ga. 574, 577 (6) (19 S. E. 2d, 302).

What has just been said as to the evidence relating to the amendment to count 3 will apply in like manner to the evidence as related to the other amendments.

■ Under the rulings in the three divisions next preceding, the verdict for the plaintiff as to count 3 was unauthorized. What, then, may be said as to count 1? If the first deed, purporting to convey the entire estate should stand, there might be some question as to whether the second deed to the same grantee would have the effect of reserving a life-estate. Code, § 29-102; *Yaughn* v. *Harper,* 151 Ga. 187 (106 S. E. 100); *Peppers* v. *Peppers,* 194 Ga. 10 (2) (20 S. E. 2d, 409). However, if the first deed was never delivered, as the jury were authorized to find, then the second deed reserved a life-estate, entitling the plaintiff to possession. Under this theory, the evidence authorized the verdict in her favor for an injunction to restrain interference with such possession.

■ Where, after the denial of a motion for nonsuit, a verdict for the plaintiff was rendered, this court will not review the ruling as to a nonsuit, where the defendant moved for a new trial on the general grounds that the verdict was contrary to the evidence and without evidence to support it, and excepts to a judgment overruling such motion. Accordingly, no ruling will be made as to the refusal to grant a nonsuit, complained of in the second ground of the amendment to the motion for new trial. This is not to im-

ply that such a question could, as a matter of procedure, be properly raised in a motion for new trial. *Don* v. *Don,* 163 *Ga.* 31 (3) (135 S. E. 409) ; *Guffin* v. *Kelly,* supra.

■ We consider next the complaint as to the statement of the plaintiff's attorney as set out in the first ground of the amendment to the motion for a new trial. The facts touching this matter are substantially as follows: The statement of the attorney, amplified on interrogation, was to the effect that he was authorized by Rufus Pritchett, holder of the security deed and note, to state that Pritchett would relieve the defendant from all personal liability and look only to the property,—that Pritchett had stated to the attorney that all he wanted was the land or the money, and that anything the attorney might do would suit him. The statement was objected to by counsel for the defendant upon the following grounds :: The contract was under seal, and it would require authority under seal to authorize such a statement in behalf of Pritchett; an attorney has no authority to accept less than the full amount of a debt unless he has authority from his client; there was no consideration, for the promise by the attorney; that it did not amount to a release,. and judgment would be taken against the defendant on foreclosure; and that the statement was prejudicial to the defendant, and was immaterial and irrelevant.

The court, in the first instance, deferred a ruling upon the objection, and again, on being reminded of the matter, after the evidence had closed, stated that he would rule on it later. Assuming that in these circumstances no further renewal of the objection was necessary, we do not think that this ground of the motion was sufficient to show error. The plaintiff's attorney was speaking in a dual capacity. While his statement appears to have been made primarily in the interest of the plaintiff, Mrs. Grice, he was also attorney of record for Rufus Pritchett, for whom it appears he had filed an answer to the defendant's cross-action. Regardless of consideration, Pritchett himself could have stated in open court that he would relieve the defendant from personal liability and look only to the property, and from the facts stated by the attorney, the latter was expressly authorized to say as much for him. Compare *Howell* v. *Howell,* 188 *Ga.* 803 (4 S. E. 2d, 835). The statement was in the nature of a solemn admission in judicio, and a judgment or decree binding upon Pritchett could have been entered accordingly,.

Code, § 38-114. Nor was the statement irrelevant and prejudicial, :as contended. True, it may have had some effect upon the verdict, but this would not make it prejudicial in the sense of the law, if ·it was not otherwise subject to objection. As to relevancy, while ·the plaintiff alleged nothing as to having done equity or as to her ·willingness to do equity, the defendant had just testified on examination by his own attorney: "I have not been released from this note by the Federal Land Bank;" which testimony was evidently :given for the purpose of showing that the plaintiff had not done ·equity; and whether the answer of the defendant as drawn was sufficient to admit evidence as to such issue, it could have been :amended so as to make the quoted testimony of the defendant admissible. *Napier* v. *Strong*, 19 *Ga. App.* 401 (2) (91 S. E. 579). ·The defendant having thus injected the issue as to doing equity, the plaintiff could make reply by showing the consent of Pritchett to relieve the defendant of personal liability (*Collins Park & Belt R. Co.* v. *Ware*, 112 *Ga.* 663 (2), 37 S. E. 975; *Brown* v. *Wilson*, 55 *Ga. App.* 262, 189 S. E. 860) ; and this is true, regardless of ·whether the evidence might otherwise have been subject to such objection. *Williams* v. *Fouché*, 157 *Ga.* 227 (121 S. E. 217) ; *Harton* v. *Federal Land Bank of Columbia*, 187 *Ga.* 700 (2 S. E. 2d, 62). ·None of the objections urged were meritorious.

■ Having held that the verdict for the plaintiff on counts 1 .and 2 was authorized, and that no error has been shown as to these counts, we see no reason for reversing the judgment as to them. ·Therefore the judgment refusing a new trial is affirmed as to counts 1 and 2, but is reversed as to count 3. *Jeffries-McElrath Manufacturing Co.* v. *Huiet*, 196 *Ga.* 710 (27 S. E. 2d, 385).

*Judgment affirmed in part, and reversed in part. All the Justices concur, except Grice, Justice, disqualified, and Wyatt, Justice, who dissents from the rulings to the effect that the verdict on count 3 was unauthorized, and from the judgment of reversal as to that count.*